# 2003 DTA 95

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL IV**

JOSE L. CALES LUGO
Recurrente

v.

ADMINISTRACION DEL DERECHO AL TRABAJO
Recurrida

Núm. KLRA-01-00640 / KLRA-01-00687

San Juan, Puerto Rico, a 30 de mayo de 2003

Panel integrado por su Presidente, Juez Gierbolini
y los Jueces Cordero y Rodríguez Muñiz

Cordero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

José L. Cales Lugo ("*Cales*") presentó "*Solicitud de Revisión*" el 5 de octubre de 2001 en la cual nos solicitó la revisión de una Resolución emitida por el Departamento del Trabajo y Recursos Humanos ("*Departamento*") el 24 de septiembre de 2001, notificada el 25 de septiembre de 2001 (KLRA-2001-00640). Luego, presentó el 24 de octubre de 2001 una "*Solicitud de Revisión y Consolidación*" en la que nos solicitó la revisión de una Resolución emitida y notificada por el Departamento el 8 de octubre de 2001 (KLRA-01-00687). Por tratarse los casos en cuestión sobre las mismas controversias, este Tribunal emitió Orden el 21 de febrero de 2002 en la que ordenó la consolidación de los casos.

## I

Cales trabajaba como empleado de la Compañía de Centrocamiones. Luego de un incidente, fue cesanteado por lo que Cales acudió a las Oficinas del Negociado de Desempleo el 11 de octubre de 1996 para acogerse a los beneficios que otorga la referida ley. Cales reclamó el período del 20 de octubre de 1996 al 5 de abril de 1997.

Tras la solicitud correspondiente, Cales resultó elegible para recibir la cantidad de $133.00 semanales de los beneficios de compensación por desempleo.

No obstante, el 18 de octubre de 1996, Cales fue sentenciado a seis años de reclusión por el delito de apropiación ilegal agravada. Así las cosas, el 13 de marzo de 1997, Cales dirigió carta al Departamento indicando que era elegible a los beneficios por desempleo por la cantidad de $133.00, pero que no había podido asistir a una cita el 21 de octubre de 1996 en dicho Departamento debido a su ingreso en la institución penal. Cales solicitó los formularios correspondientes para completar los mismos.

Posteriormente, el 26 de mayo de 1997, Cales escribió nuevamente al Departamento reiterando su solicitud. Esta fue contestada mediante misiva de 3 de junio que lee en lo pertinente como sigue:

*"... El trabajador debe estar física y mentalmente capacitado para trabajar y realizando gestiones diligentes para reemplearse. Debe estar libre de problemas que le impidan aceptar un trabajo adecuado.*

*Tan pronto usted se reintegre a la libre comunidad, deberá asistir a su oficina local para solucionar los problemas relacionados con su caso. Usted tiene una entrevista de búsqueda de datos pendiente de resolver. Por tal motivo es que usted no se le ha podido otorgar los beneficios de Seguro por Desempleo."*

Cales ██ se presentó ante el Departamento el 5 de mayo de 2000; sin embargo, allí le indicaron que no tenía derecho a desempleo. Cales procedió a radicar un *Mandamus* ante el Tribunal de Primera Instancia, Sala Superior de San Juan, Caso Número KPE-00-1271, en el cual indicó que es acreedor al beneficio por desempleo, pero que no ha recibido pago alguno, a pesar de que así lo ha requerido, por lo que ha sufrido daños.

Así las cosas, el 16 de octubre de 2000, el Departamento y Cales llegaron a una estipulación que fue aprobada por el tribunal el 28 de noviembre de 2000 y que lee como sigue:

*"1. Que en el caso de epígrafe, las partes han llegado a los siguientes acuerdos:*

*a) Que el caso de desempleo que tenía pendiente el demandante Sr. José L. Cales Lugo **se va a continuar exactamente donde fue interrumpido** por el hecho de haber sido interrumpido por haber sido ingresado el demandante Sr. José L. Cales Lugo.*

*b) Se le garantizará al Sr. José L. Cales Lugo todo el debido proceso de ley que le corresponde en derecho para que presente su caso ante la Administración del Derecho al Trabajo y los Tribunales del Estado Libre Asociado de Puerto Rico.*

*c) El caso Civil Núm. KPE00-1271 (905) sobre violación de Derechos y Daños y Perjuicios será DESISTIDO SIN PERJUICIO, ya que el demandante tendrá otra vía legal para acudir a los Tribunales de ser necesario."* (Enfasis suplido.)

Cales fue a las oficinas del Departamento el 27 de octubre de 2000, y cumplimentó el *"Resumen de Entrevista de Búsqueda de Datos"* en la que indicó:

*"Deseo informar que no estuve disponible para trabajar desde el 18 de octubre de 1996 hasta el 12 de abril de 2000 debido a que estuve encarcelado. Aún no he terminado la sentencia. Es por tal razón que no visité la oficina, no envié ordenes de pago."*

Posteriormente, el Departamento emitió una determinación el 17 de noviembre de 2000 en la que indicó que:

*"Usted envió el formulario de Reclamación Subsiguiente después de haber transcurrido catorce (14) días siguientes a la fecha cuando éste debió ser enviado por correo.*

*Consideramos que usted no cumplió con el requisito de someter su reclamación a tiempo.*

*Se le declara inelegible a recibir beneficios desde 10/26/96 hasta 04/05/97.*

*Esta decisión está basada en la Sección 3.3(f) del Reglamento Núm. 2 de la Ley de Seguridad de Empleo de Puerto Rico."*

Ante esta determinación, Cales solicitó audiencia ante el árbitro del Departamento, el cual, mediante Resolución del 25 de abril de 2001, concluyó que Cales no cumplió con el requisito de someter su reclamación a tiempo, ya que las mismas fueron relacionadas después de finalizado el año de beneficios.

Inconforme, Cales apeló oportunamente al Secretario del Trabajo, el cual emitió decisión el 24 de septiembre de 2001 en la que indicó que:

*"Aunque las razones que tuvo el reclamante para no radicar las reclamaciones subsiguientes en el término establecido debido a su reclusión pueden ser razonables y justas, debemos ponderar estos hechos de acuerdo a la Ley que nos ocupa.*

*El reclamante no cumplió con los requisitos que establece la Ley; las reclamaciones subsiguientes fueron radicadas fuera del término establecido y después de finalizado el año de beneficios.*

*Debemos señalar que el reclamante, mientras estuvo recluido en la institución penal, no estuvo apto y disponible para trabajar. Durante el período de la efectividad de su reclamación, aunque hubiera radicado las reclamaciones subsiguientes en tiempo, no cumplía **con uno de los requisitos fundamentales para ser acreedor a recibir estos beneficios como lo es la disponibilidad.***

*La reclamación que tenemos ante nuestra consideración no cumple con los requisitos que señala la Ley, por lo cual tenemos que concluir que el reclamante no es acreedor para recibir estos beneficios."* (Enfasis suplido.)

Cales comparece ante nos y señaló que erró el Departamento al no cumplir con los términos de la estipulación entre las partes. Con la comparecencia de todas las partes, procedemos a resolver.

## II

Nuestro Tribunal Supremo ha definido la transacción como un contrato por el cual, las partes, mediante recíprocas concesiones, evitan la provocación de un pleito o ponen fin al que habían comenzado. Art. 1709 del Código Civil, 31 L.P.R.A. § 4821. De esta definición se desprende que son dos (2) los presupuestos necesarios para que un contrato pueda calificarse como de transacción: que exista una situación de controversia entre dos (2) o más personas y la necesidad de recíprocas concesiones entre ellas. De ahí también se deduce que existen dos (2) clases de contratos de transacción: el judicial y el extrajudicial. Si antes de comenzar un pleito, las

partes acuerdan eliminar la controversia mediante un acuerdo, nos encontramos ante un contrato de transacción extrajudicial. Aunque puede ocurrir que estando aún el pleito pendiente, las partes acuerden una transacción sin la intervención del tribunal. En este caso, existe también un contrato de transacción extrajudicial y bastará un mero aviso de desistimiento. En cambio, si la controversia degenera en un pleito y, luego de éste haber comenzado, las partes acuerdan eliminar la controversia y solicitan incorporar el acuerdo al proceso en curso, estamos ante un contrato de transacción judicial que tiene el efecto de terminar el pleito. J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Rev. Jur. U.I.A.P.R., 1990, T. IV, Vol. II, pág. 498. *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 D.P.R. 860, 870-871 (1995). La estipulación suscrita por las partes y aceptada por el tribunal finaliza el pleito y, por lo tanto, constituye un contrato de transacción que obliga a las partes. *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 74 (1987). La transacción de una causa de acción entre los litigantes debe responder a la voluntad de las partes, ya que, salvo cuando la ley expresamente lo prohíba o lo limite, los derechos se pueden renunciar y transigir. *Ponce Gas Service Corp. v. J.R.T.*, 104 D.P.R. 698, 702 (1976).

Al determinar el alcance de las transacciones, el Tribunal Supremo ha resuelto que de conformidad con el Artículo 1714 del Código Civil, 31 L.P.R.A. § 4826, éstas deben interpretarse restrictivamente, ya que "*la transacción no comprende sino los objetos expresados determinadamente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma.*" *Ramos Rivera v. E.L.A.*, 148 D.P.R. 118, 129 (1999).

Sin embargo, una transacción estaría viciada de nulidad y puede impugnarse cuando, en el consentimiento prestado por una de las partes, medie error, dolo, violencia, intimidación o falsedad de documentos. Art. 1716 del Código Civil, 31 L.P.R.A. §4828; *Febus v. MARPE Const. Corp.*, 135 D.P.R. 206, 216 (1994). También están viciadas de nulidad, cuando versan sobre un asunto o causa de acción sobre el que la ley prohíbe transar. El Art. 1715 del Código Civil, 31 L.P.R.A. §4827, recoge el principio de que la transacción tiene para las partes el efecto de cosa juzgada, por lo que no se puede volver nuevamente sobre eso. Las partes tienen que considerar los puntos discutidos como definitivamente resueltos, ya que, de lo contrario, la transacción perdería su razón de ser y de existir. *Citibank v. Dependable Ins., supra*, a la pág. 516.

Por último, si un contrato de transacción judicial es incumplido por alguna de las partes, se puede solicitar inmediatamente que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza de la sentencia firme y se puede, por lo tanto, utilizar el procedimiento de apremio. *Neca Mortgage Corp. v. A&W Dev. S.E., supra*, a la pág. 875.

### III

El Negociado de Seguridad de Empleo fue creado para poner en vigor un estatuto, cuya finalidad es "*promover la seguridad de empleo facilitando las oportunidades de trabajo por medio del mantenimiento de un sistema de oficinas públicas de empleo y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas*". 29 L.P.R.A. § 701.

En la consecución de ese fin, la Ley establece un fondo de desempleo, distinto y separado de todos los dineros o fondos del Estado Libre Asociado de Puerto Rico, sufragado por las contribuciones pagadas por los patronos de acuerdo con los parámetros establecidos en la propia Ley. 29 L.P.R.A. § 710. El Secretario del Trabajo y Recursos Humanos tiene la obligación de interpretar y administrar el fondo conforme la Ley y su primordial objetivo de proteger contra la inseguridad económica y el riesgo del desempleo. En lo pertinente, la Exposición de Motivos señala:

"*El desempleo es materia de interés e incumbencia general; por tanto, la Asamblea Legislativa declara que los ciudadanos de Puerto Rico necesitan la adopción de la siguiente medida, dentro del poder de policía del ELA para el establecimiento y mantenimiento de oficinas públicas y gratuitas de empleo y para el proveimiento compulsorio de fondos de reserva para ser usados en beneficio de las **personas desempleadas**.*" (Enfasis

suplido.)

El Reglamento Núm. 2 para Regular el Pago de Beneficios bajo la Ley de Seguridad de Empleo dispone que:

*"El Negociado de Seguridad de Empleo podrá permitir la radicación de la reclamación subsiguiente para ser efectiva el primer día del período de una o dos semanas naturales anteriores a la semana en que la reclamación debió haber sido radicada, siempre y cuando se muestre una razón justificada para la dilación de formalizar y enviar el formulario diseñado para este fin, debidamente completado, dentro de los catorce (14) días siguientes a la fecha cuando éste debió ser enviado por correo."* Sec. 3.3(f) del Reglamento.

A su vez, el Reglamento dispone que las reclamaciones iniciales de beneficios se harán personalmente y en el formulario provisto para ello, haciendo constar que el trabajador se ha registrado para trabajar. Véase Sección 3.2(a) del Reglamento. A su vez, la sección 3.2(b) dispone:

*"La **fecha de efectividad** de una reclamación inicial de beneficios hecha de acuerdo con el párrafo (a) precedente, a excepción de aquéllas que se hagan por trabajadores parcialmente desempleados, **será el primer día de la semana natural en que el trabajador se registre para trabajar y radique su reclamación de beneficios."*** (Enfasis suplido.)

La Ley de Seguridad en el Empleo define lo que es el año de beneficio, en lo pertinente, como:

*"[E]l período de cincuenta y dos (52) semanas consecutivas comenzando con el domingo de la semana en que esa persona presenta una solicitud para que se determine su condición de asegurado; siempre y cuando, que en relación con esa semana, la persona no tenga vigente un año de beneficios previamente establecido."* 29 L.P.R.A. § 602(d).

Es obvio, pues, que sólo personas desempleadas, que sean elegibles, recibirán sus beneficios. La Ley de Seguridad en el Empleo dispone:

*"(a)(1) Elegibilidad para beneficios- Se considerará que un trabajador asegurado es elegible para recibir y recibirá crédito por semana de espera o beneficio, según sea el caso, por cualquier semana de desempleo con respecto a la cual no se haya determinado que dicha persona está descalificada bajo el inciso (b) de esta sección, siempre que, con respecto a tal semana, dicho trabajador cumpla, además, con los siguientes requisitos de acuerdo con las reglas que al efecto establezca el Secretario:*

*(A) ...*

*(B) Se haya registrado para trabajar con una oficina del Servicio de Empleo.*

*(C) ...*

*(D) Participe de los servicios de reempleo disponibles, tales como programas de ayuda en la búsqueda de empleo, si el reclamante ha sido identificado como un posible agotador de los beneficios regulares con necesidad de recibir servicios de reempleo, conforme a los criterios de un perfil de características establecido por el Secretario mediante reglamento, a menos que el Secretario determine que:*

*i. El reclamante ha recibido dichos servicios, o*

*ii. **Existe una razón justificada para que el reclamante no haya participado de tales servicios.**"* 29 L.P.R.

A. § 704.

Por su parte, una persona está descalificada para recibir el beneficio cuando:

*"(b) Descalificaciones- Un trabajador asegurado no será descalificado para recibir crédito por semana de espera o beneficios por cualquier semana de desempleo, a menos que, con respecto a dicha semana, el Director [del Negociado de Seguridad de Empleo] determine que:*

*(1) **No estaba apto para trabajar o no estaba disponible para realizar trabajo adecuado durante dicha semana**; o*

*(2) abandonó un trabajo adecuado voluntariamente y sin justa causa....".* (Enfasis nuestro.) 29 L.P.R.A. § 704.

De lo antes transcrito, resulta claro que para recibir beneficios al amparo de esta Ley, un trabajador tiene que reunir **todas** las condiciones de elegibilidad visualizados en la sección 4(b) de la Ley. Es decir, en lo que nos concierne al caso ante nuestra consideración, para cualificar y ser acreedor a recibir los beneficios, el trabajador tiene que cumplir con **ambos** requisitos: 1) haber abandonado su empleo involuntariamente y con justa causa, y 2) estar apto y disponible para trabajar. Por ende, si un trabajador no reúne uno de estos requisitos, queda descalificado. Recientemente, el Tribunal Supremo definió el término *"apto y disponible para trabajar"* como *"el que esté capaz y dispuesto a ocupar un puesto tan pronto esté disponible"*. No es suficiente que la persona se encuentre mentalmente en *"ánimo favorable para realizar una tarea"...*, *"es necesario trascender lo mental, esto es, que la persona no tenga obstáculo físico para aceptar el empleo." Castillo Camacho v. Departamento del Trabajo y Recursos Humanos, __D.P.R.__* (29 sept. 2000), **2000 J.T.S. 154**, a la pág. 149.

Aunque la propia Ley dispone que *"será liberalmente interpretada para cumplir con su propósito de promover la seguridad de empleos... y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas."* (29 L.P.R.A., § 701). Ello no significa que deba interpretarse de manera que se le reconozca beneficios a quienes no cualifican.

## IV

Aunque, ciertamente, hubo entre las partes una estipulación judicial, la misma lo que dispone es que el caso de Cales ante el Departamento **se va a continuar exactamente donde quedó interrumpido**. Por tanto, Cales solicitó los beneficios para el período que comprendía el 20 de octubre de 1996 al 5 de abril de 1997; en definitiva, el Departamento se comprometió por medio de la referida estipulación a determinar si bajo dicho trámite Cales era acreedor del beneficio para el referido período. Ciertamente, Cales no cumplió con los requisitos que establece la Ley en cuanto al término para presentar sus reclamaciones subsiguientes; sin embargo, el estar confinado es una razón justificada para tal incumplimiento. No obstante, ello de por sí sólo, no conlleva que Cales sea acreedor al beneficio requerido. Es necesario que cumpla con los demás requisitos establecidos en la Ley.

En el caso de autos, quedó establecido que Cales fue cesanteado de su empleo, cumpliendo así con el primer requisito, pero debemos determinar si éste estaba *"apto y disponible para trabajar"*. Sin lugar a dudas, Cales indicó que no estuvo disponible para trabajar desde el 18 de octubre de 1996 hasta el 12 de abril de 2000 debido a que estuvo encarcelado. Siendo ello así, Cales tenía un obstáculo físico para aceptar cualquier empleo, no cumpliendo con el segundo requisito para cualificar al beneficio por desempleo. O sea, no estaba *"apto y disponible para trabajar"*.

**V**

Por los fundamentos antes esbozados, se expide el auto solicitado y se confirma la Resolución del Departamento.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA 95**

**1.** Salió a la libre comunidad en abril de 2000 por pase extendido.