NECA MORTGAGE CORPORATION, demandante y recurrente, *v.* A & W DEVELOPERS S.E. y OTROS, demandados y recurridos.

*Número:* RE-92-494 *Resuelto:* 7 de febrero de 1995

*Carlos Martínez Vélez,* de *Montañez & Alicea,* abogado de la parte recurrente; *Enrique Alcaraz Micheli,* abogado de la parte recurrida.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

I

*Hechos*

A & W Developers S.E. (en adelante A & W) es dueña de un solar ubicado en el barrio Caimital de Aguadilla. Neca Mortgage Corporation (en adelante Neca) acordó con A & W comprar dicho solar. Sin embargo, por diversas razones, la compraventa no se llevó a cabo.[1] Por tal razón, Neca demandó a A & W para solicitar el cumplimiento específico

---

[1] En ese contrato de compraventa se había acordado que la fecha de cierre sería el *20 de agosto de 1990* y por el precio de ciento dos mil dólares ($102,000).

del contrato. También solicitó al tribunal de instancia que se anotara un aviso de pleito pendiente en el Registro de la Propiedad. El 16 de julio de 1991, el tribunal ordenó dicha anotación.

El 1ro de agosto de 1991, A & W ofreció a Neca una transacción del pleito; la oferta contenía un nuevo precio de venta, los términos de la transacción y fijaba como fecha de efectividad el 20 de agosto de 1991. El *16 de agosto de 1991*, Neca hizo una contraoferta de la cual surge que el cierre se llevaría a cabo el *20 de septiembre de 1991*. El mismo 16 de agosto de 1991, A & W aceptó todas las condiciones propuestas por Neca, con excepción del precio de compraventa. Tres (3) días más tarde, el 19 de agosto de 1991, Neca hizo una nueva contraoferta respecto al precio.

El 28 de agosto de 1991, las partes llegaron a un acuerdo final sobre el precio de venta. En una carta de esa misma fecha, la representación legal de Neca le indicó lo siguiente a la representación legal de A & W:

> Confirmo nuestra conversación telefónica ... en relación a nuestra contraoferta y la cantidad fijada para el precio de compraventa.
>
> Quedamos en que el precio se quedaría en $200,000.00 y al deducirle la cantidad de $81,000.00 del balance de la primera hipoteca a favor del Banco Popular[,] según cantidad suministrada por ustedes sujeta a verificación a la fecha del cierre y la cantidad correspondiente a gastos y honorarios de abogado[,] su cliente recibirá la cantidad neta de $117,000.00. *Los demás acuerdos establecidos en nuestra carta del 16 de agosto de 1991 seguirán inalterados.* Tan solo falta informarle si podemos llevar a cabo el cierre *antes* del día *20 de septiembre de 1991.* Tan pronto tenga la confirmación de nuestro cliente[,] nos pondremos en comunicación con usted para fijar la fecha del cierre." (Énfasis suplido.)

Mediante Carta de 17 de septiembre de 1991, Neca le notificó a A & W que no podría perfeccionarse el contrato de compraventa el 20 de septiembre de 1991. Dicha carta comienza con el párrafo siguiente:

> Según el acuerdo convenido se supone que mañana 20 de

septiembre de 1991 otorguemos la correspondiente escritura de compraventa para transigir el pleito de referencia.

Como no se llevó a cabo la transacción en la fecha pactada, A & W presentó una "Solicitud de Cancelación de Anotación de Pleito Pendiente y Reconvención" ante el Tribunal Superior. Alegó que las partes habían llegado a un acuerdo transaccional de que la compraventa se efectuaría no más tarde de 20 de septiembre de 1991 y que Neca había incumplido con dicho pacto. Señaló que, no obstante el acuerdo mencionado, Neca había permitido la continuación de la anotación de pleito pendiente por un espacio de tiempo en exceso de un mes, lo que le había ocasionado daños comerciales y personales. Indicó, además, que optaba por resolver el contrato de transacción pactado. Solicitó al tribunal que desestimara la demanda original, que se cancelara la anotación de pleito pendiente y que se le pagaran daños por cuarenta mil dólares ($40,000), ocasionados por el incumplimiento del contrato de transacción y por la anotación de pleito pendiente. Posteriormente, A & W presentó una moción de sentencia sumaria parcial, la cual acompañó con las comunicaciones habidas entre las partes.

Neca se opuso a la referida moción y expresó que, a fines de terminar el pleito, aceptaba que hubo una transacción, pero sin fecha fijada, y que correspondía que el tribunal fijase la fecha para llevarla a cabo. Alegó, además, que la fecha es una obligación accesoria que no da derecho a la resolución del contrato.

Así las cosas, el tribunal de instancia dictó la sentencia sumaria a favor de A & W. Concluyó que hubo una transacción que disponía que las escrituras de compraventa se otorgarían el 20 de septiembre de 1991; que esta transacción constituyó una novación que extinguió el contrato de compraventa original; que al no otorgarse la escritura, Neca incurrió en mora, y que tal incumplimiento de obligaciones recíprocas da lugar a la resolución del contrato de

transacción y a reclamar los daños. Como consecuencia, el tribunal desestimó la demanda original, resolvió el contrato de transacción y dejó pendiente la reclamación de daños. Indicó, por último, que una vez la sentencia adviniera final y firme, se cancelaría la anotación de pleito pendiente.

Inconforme con el resultado, Neca acude ante nos, mediante recurso de revisión, en el cual plantea los siguientes errores:

1. El tribunal violó el debido procedimiento de ley al dictar sentencia sumaria declarando con lugar una reconvención suplementaria, cuya presentación no fue solicitada, ni autorizada por el tribunal, privando con ello a la parte demandante de contestar y presentar defensas afirmativas contra dicha reconvención, concediendo, además, remedios que no fueron solicitados, ni procedían en derecho.

2. Erró el tribunal al concluir que hubo un acuerdo para otorgar escrituras el 20 de septiembre de 1991, hecho que fue esencial en la sentencia y respecto al cual existía controversia que impedía dictar sentencia sumaria.

3. Erró el tribunal al resolver que la demandante incumplió la transacción, al no otorgar escrituras en la fecha pactada, incurriendo en mora ante la previa intimación realizada por la demanda[da] para que las otorgara; y al no determinar[,] en cambio, que el otorgamiento de escrituras es obligación accesoria cuya mora no autoriza a resolver un contrato y menos una transacción, que es cosa juzgada no susceptible de resolución.

Decidimos revisar y expedimos el recurso.

II

*La alegación suplementaria*

 La Regla 11.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, obliga a la parte demandada a formular, al momento de su contestación, cualquier reclamación compulsoria, es decir, cualquier reclamación que tenga contra la parte adversa, si ésta surge de la acción, omisión o evento que motiva la reclamación de la parte demandante.

El propósito de esta regla es evitar la multiplicidad de litigios al establecer un mecanismo para dilucidar todas las controversias comunes en una sola acción. R. Hernández Colón, *Manual de Derecho Procesal Civil*, 2da ed. rev., San Juan, Ed. Equity, 1981, pág. 183; J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 68. Si una reconvención cumpulsoria no se formula a tiempo, se renuncia la causa de acción que la motiva y quedarán totalmente adjudicados los hechos y las reclamaciones sin que el demandado pueda presentar posteriormente una reclamación que haya surgido de los mismos eventos. Hernández Colón, *op. cit.* Le será aplicable, por analogía, el principio de cosa juzgada, al efecto de que será concluyente en relación con aquellos asuntos que pudieron haber sido planteados y no lo fueron. *Sastre v. Cabrera*, 75 D.P.R. 1, 3 (1953).

Sin embargo, existen algunas excepciones que eximen a la parte demandada de presentar la reconvención compulsoria en su contestación a la demanda. Una de éstas es la reconvención por alegación suplementaria mediante la cual la demandada puede presentar su reconvención cuando los hechos que dan lugar a ésta ocurrieron después que la demandada ha formulado su contestación a la demanda. Regla 11.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Es necesario solicitarle permiso al tribunal para formular esta alegación suplementaria. Esta última regla está relacionada con la Regla 13.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la que permite que una parte pueda presentar las alegaciones suplementarias en cualquier momento durante los procedimientos, siempre a discreción del tribunal. El propósito de la regla es poner al día el litigio mediante la adición de alegaciones respecto a hechos ocurridos con posterioridad a la alegación que se pretende suplementar. Cuevas Segarra, *op. cit.*, pág. 81. La mejor práctica es acompañar la alegación suplementaria propuesta con la moción para solicitar el permiso para

presentarla. Hernández Colón, *op. cit.*, pág. 189. Si el tribunal considera que la parte adversa debe presentar unas alegaciones en contrario a la alegación suplementaria, así lo ordenará y especificará el plazo para ello. Regla 13.4 de Procedimiento Civil, *supra.*

 Las reglas que conceden discreción a los tribunales para autorizar las enmiendas a las alegaciones son preceptos reparadores que deben interpretarse liberalmente. *Gutiérrez et al. v. Foix et al.*, 23 D.P.R. 73 (1915). Además, el poder de los tribunales para permitir unas enmiendas a las alegaciones es amplio, y tiene que demostrarse un claro abuso de discreción o un perjuicio manifiesto a la parte contraria para que se revoque la actuación del juez. *Torres et al. v. Ramos*, 28 D.P.R. 586, 588 (1920).

En el caso de autos, si bien es cierto que A & W no solicitó expresamente permiso al tribunal para presentar la reconvención por alegación suplementaria, no es menos cierto que el tribunal la acogió. La reconvención fue presentada el 2 de octubre de 1991 y el tribunal, mediante Orden de 14 de octubre de 1991, le concedió a la parte contraria —Neca— un término de diez (10) días para que se expresara. Ésta presentó su réplica a la reconvención. Posteriormente, el tribunal señaló la conferencia sobre el estado de los procedimientos, en la cual ambas partes discutieron lo planteado en la reconvención. Surge de lo anterior que el tribunal, en el sano ejercicio de su discreción, permitió que las partes expresaran sus posiciones y acogió la reconvención.

 De otro lado, los remedios concedidos en la sentencia sumaria parcial surgían de la reconvención. Además, independientemente de que estuvieran contenidos o no en la súplica, un tribunal concederá en su sentencia el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no lo haya solicitado. Regla 43.6 de Procedimiento Civil, 32 L.P.R.A. Ap. III; *A.T.P.R. v. Padín San-*

*tiago*, 104 D.P.R. 426, 428 (1975). Cualquier defecto en la denominación del pleito o en la súplica del remedio no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba. Regla 70 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Ahora bien, si los remedios concedidos por el tribunal sentenciador en este caso eran los que procedían en derecho, será materia de discusión en la Parte IV de esta opinión.

## III

*La sentencia sumaria*

■ La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, faculta al tribunal a que, discrecionalmente, dicte una sentencia sumaria a favor de una parte. El mecanismo de la sentencia sumaria tiene el propósito de aligerar la tramitación de un caso al permitir que se dicte la sentencia sin necesidad de que se tenga que celebrar una vista en los méritos. Esto es así, cuando de los documentos no controvertidos que se acompañan con la solicitud surge que no existe disputa de hecho a ser dirimida y que sólo resta aplicar el derecho. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

En el caso de autos, las partes acompañaron la solicitud de sentencia sumaria y su oposición con una prueba documental consistente en las cartas cursadas entre éstas. Neca acompañó, además, una declaración jurada relativa a la razón por la cual no se llevó a cabo el cierre original el 20 de agosto de 1990.

De todas las comunicaciones entre las partes surge que desde el 16 de agosto de 1991, éstas habían acordado que el cierre se efectuaría el 20 de septiembre de 1991. Posteriormente, se habla de la posibilidad de efectuar el cierre *antes* de 20 de septiembre de 1991. Por lo tanto, no existe controversia en que tenían hasta ese día para proceder al cie-

rre de la compraventa, según el acuerdo de transacción.([2]) El segundo error tampoco se cometió.

## IV

*El contrato de transacción y el concepto de resolución*

En el tercer error Neca arguye que debido a que hubo un contrato de transacción, lo que procedía era que el tribunal de instancia ordenara su cumplimiento y no que decretara la resolución del contrato. No le asiste la razón.

La transacción es un contrato por el cual las partes, mediante recíprocas concesiones, evitan la provocación de un pleito o ponen fin al que había comenzado. Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821. De esta definición se desprende que son dos (2) los presupuestos necesarios para que un contrato pueda calificarse como de transacción: que exista una situación de controversia entre dos (2) o más personas, y la necesidad de recíprocas concesiones entre ellas. De ahí también se deduce que existen dos (2) clases de contratos de transacción: el judicial y el extrajudicial. Si, antes de comenzar un pleito, las partes acuerdan eliminar la controversia mediante un acuerdo, nos encontramos ante un contrato de transacción extrajudicial. Aunque puede ocurrir que, estando aún el pleito pendiente, las partes acuerden una transacción sin la intervención del tribunal. En ese caso, existe también un contrato de transacción extrajudicial y bastará un mero aviso de desistimiento. En cambio, si la controversia degenera en un pleito y, luego de éste haber comenzado, las partes acuerdan eliminar la controversia y solicitan incor-

---

([2]) Neca pretende desvirtuar todas las manifestaciones sobre la fecha del cierre con la última oración que aparece en la Carta de 28 de agosto de 1991, que lee: "Tan pronto tenga la confirmación de nuestro cliente nos pondremos en comunicación con usted para fijar la fecha del cierre." Esta carta es anterior a la Carta de 19 de septiembre de 1991, en la cual se reitera, claramente, que el cierre se llevaría a cabo no más tarde de 20 de septiembre de 1991.

porar el acuerdo al proceso en curso, estamos ante un contrato de transacción judicial que tiene el efecto de terminar el pleito. J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Rev. Jur. U.I.A.P.R., 1990, T. IV, Vol. II, pág. 498.

Como todo contrato, el contrato de transacción tiene los requisitos establecidos en el Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391. Existe el consentimiento de los contratantes, ya que tiene que ser consensual; su objeto es la controversia entre las partes —la polémica judicial o extrajudicial— pues sin ella no puede existir la transacción, y su causa consiste en la eliminación de la controversia mediante recíprocas concesiones, pues si bien tiene el propósito de desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad en que ello se logra mediante renuncias mutuas. T. Ogáyar Ayllón, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1983, T. XXII, Vol. 2, pág. 5.

Se ha discutido extensamente sobre si la transacción debe producir el mismo efecto que la sentencia firme, es decir, la autoridad de cosa juzgada, o si, por el contrario, debe limitarse a constituir un contrato, como cualquier otro, que requiera un nuevo litigio para su ejecución, en defecto de su cumplimiento. D. Espín Cánovas, *Manual de Derecho Civil Español*, 6ta ed., Madrid, Ed. Rev. Der. Privado, 1983, Vol. III, pág. 734. Hay que recordar que la transacción, como todo contrato, no garantiza el evento de que uno de los contratantes incumpla y haga precisa la intervención judicial para vencer la voluntad rebelde y procurar que la transacción rinda su finalidad esencial de dirimir divergencias en la forma convenida. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 12ma ed., Madrid, Ed. Reus, T. IV, pág. 816.

El Art. 1715 del Código Civil, 31 L.P.R.A. sec. 4827, recoge el principio favorable a la autoridad de la cosa juzgada de lo convenido en la transacción. Éste dispone

que "[l]a transacción tiene para las partes la autoridad de cosa juzgada, pero no procederá la vía de apremio sino tratándose del cumplimiento de la transacción judicial". Esto significa que las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre éstos. *Citibank v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503, 516 (1988). También significa que la transacción judicial es la única que tiene fuerza para abrir la vía de apremio, es decir, pedir la ejecución como si se tratara de una sentencia firme.

▮ Como consecuencia, existe una gran diferencia en cuanto a la manera de poder llevar a la práctica lo convenido en la transacción, según que ésta sea extrajudicial o judicial. La judicial puede llevarse a efecto por los trámites de la ejecución de sentencias, mientras que la extrajudicial sólo puede hacerse cumplir cuando se haya declarado su eficacia en el juicio correspondiente. Espín Cánovas, *op. cit.*, pág. 734; Puig Peña, *op. cit.*, pág. 382.

Sobre la controversia que nos ocupa y relacionado con lo anterior, debemos contestar la siguiente pregunta: ¿Existe la posibilidad de que al contrato de transacción le aplique la facultad resolutoria que le concede el Art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052, a la parte perjudicada por el incumplimiento de un contrato?[3]

Un sector doctrinal español opina que a la transacción le aplican las reglas generales de la extinción de los contratos y que, por consiguiente, una parte puede solicitar y

---

[3] "La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

"El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible.

"El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

"Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a [los artículos 1247 y 1250], ... y las disposiciones de la Ley Hipotecaria y del Registro de la Propiedad." 31 L.P.R.A. sec. 3052.

obtener su resolución por incumplimiento de la otra. Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1953, T. XXVIII, págs. 378–380; J.L. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. 2, Vol. 3, pág. 362; M. Albaladejo, *Derecho Civil*, 8va ed., Barcelona, Ed. Bosch, 1989, Vol. II, pág. 445.

La jurisprudencia del Tribunal Supremo de España también se ha manifestado en esa dirección. En general, ha resuelto que el hecho de que la transacción tenga la autoridad de cosa juzgada, no implica que sean contratos invulnerables. Dicho tribunal, en la Sentencia de 26 de abril de 1963, admitió la aplicación de la llamada condición resolutoria tácita al contrato de transacción. Razonó que la controversia se extinguió por la transacción, naciendo en su lugar unas obligaciones sujetas al Art. 1124 del Código Civil español, disposición idéntica a nuestro Art. 1077 de nuestro Código Civil, *supra*. Declaró que concertado el pacto transaccional,

> ... será éste y sólo él, quien regule las relaciones futuras [í]nsitas en la materia transigida, bien integren éstas la ratificación, modificación o extinción de todas o alguna de aquéllas o la creación de otras distintas y, por ende, los efectos de la cosa juzgada se manifestarán en el absoluto respeto a la nueva situación y en el escrupuloso cumplimiento de las obligaciones fijadas en la transacción, pero sin que ésto quiera decir que tales obligaciones, en orden a su cumplimiento o incumplimiento, se rijan por normas distintas a las establecidas con carácter general, ya que eso requeriría un precepto legal de excepción que la ley no establece ni se deduce de sus preceptos.

La sentencia confirmó la doctrina sentada en la Sentencia de 29 de septiembre de 1930 que declaró que "el artículo 1124 del Código civil, ... al hablar de resolución, no de rescisión, se refiere a toda clase de obligaciones recíprocas sin distinguirlas ni exceptuarlas por su origen, ni mucho menos excluir de sus preceptos las nacidas en los contratos de transacción". S. de 29 de septiembre de 1930, Núm. 39, 196 Jurisprudencia Civil 144. Idénticas declaraciones se

hicieron en las Sentencias de 14 de junio de 1932, 12 de marzo de 1947, 16 de mayo de 1951 y 15 de junio de 1957, las que expresamente admitieron que puede instarse la resolución de la transacción si abiertamente se faltase a sus estipulaciones. Véanse, también, las Sentencias de 14 de noviembre de 1986 y 11 de junio de 1989.

Un sector minoritario de la doctrina española señala que el único remedio disponible en los casos de incumplimiento de los acuerdos transaccionales es imponer el cumplimiento forzoso del acuerdo transaccional. Ogáyar Ayllón, *op. cit.*, págs. 64–66; L. Díez-Picazo y A. Gullón Ballesteros, *Sistema de Derecho Civil*, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. II, pág. 497. Sin embargo, el propio Gullón Ballesteros, en su *Comentario del Código Civil*, T. II, pág. 1775, señala que esta última posición "sería admisible, en último extremo, para la transacción judicial, pero es difícilmente comprensible cuando a la transacción extrajudicial se la obliga a pasar por los trámites de un juicio declarativo para obtener una sentencia que obligue al incumplidor a ejecutar lo que convino, como cualquier otro contrato normal y corriente. Por lo tanto, y desde esta perspectiva, no habría mayor inconveniente para acceder a la resolución de la transacción si se diesen los requisitos del Art. 1124 [(Art. 1077 del Código Civil de Puerto Rico)]. No se olvide que en esta figura hay 'recíprocas' concesiones".

En nuestra jurisprudencia se ha aceptado que los contratos de transacción son susceptibles de resolución. *Riera v. Macías Vda. de Riera*, 42 D.P.R. 579, 589–590 (1931); *Alvarado v. Bonilla*, 86 D.P.R. 490, 502 (1962). Estos casos trataban de transacciones extrajudiciales. En ambos se resolvió que el incumplimiento o contravención con las condiciones de un contrato de transacción, aún en el supuesto de que hubo una novación, produce su resolu-

ción y, como consecuencia, su inexistencia.(⁴) Hoy ratificamos estos principios, pero, además, aclaramos que si se trata de una transacción judicial y una de las partes no cumple con lo estipulado, como regla general no procede la resolución.(⁵) En estos casos, se puede solicitar inmediatamente que lo convenido se lleve a efecto, pues tiene para las partes la misma fuerza que la sentencia firme y se puede, por lo tanto, utilizar el procedimiento de apremio. Por otro lado, si se trata de una transacción extrajudicial, se puede solicitar la resolución, ya que en ese caso no se producen los rigurosos efectos antes mencionados. Esto es, no puede llevarse a cumplimiento inmediatamente, sino que es preciso que se haya declarado su eficacia en el juicio correspondiente y el tribunal, al evaluar el contrato, puede conceder el remedio de la resolución, siempre y cuando se cumpla con los requisitos establecidos en el Art. 1077 del Código Civil, *supra*.

Ahora bien, también debemos tener presente que no todo incumplimiento de una obligación recíproca conlleva un efecto resolutorio. Para que así sea, es menester que la obligación incumplida sea esencial o que su cumplimiento constituya el motivo del contrato para la otra parte. Por el contrario, el incumplimiento de las obligaciones accesorias o complementarias que no constituyen el verdadero motivo para celebrar el contrato, y que se incorporan a éste para completar o aclarar las estipulaciones de los contratantes, puede dar lugar a una acción de daños y perjuicios o cualquiera otra que justifique las circunstancias de cada caso, pero nunca a la acción resolutoria. La exigencia de que la obligación incumplida sea la principal

---

(⁴) La transacción tiene carácter *novatorio* cuando la situación anterior a la controversia es sustituida por la situación jurídica que origina la transacción. Es decir, cuando elimina, sustituye o modifica, y no sólo fija, la anterior relación conflictiva. *Citibank v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503, 512 (1988); *García v. The Commonwealth Ins. Co.*, 118 D.P.R. 380, 387–390 (1987).

(⁵) Podría darse el caso que aun habiéndose acordado el cumplimiento mediante una transacción judicial, ésta resulte imposible.

responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 347–348 (1989). Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo.

En el caso de autos, las partes pactaron un contrato de transacción extrajudicial de carácter novatorio, el cual modificó sustancialmente el contrato de compraventa que dio origen al litigio. La obligación contractual incumplida —el otorgamiento de la escritura de compraventa dentro del plazo estipulado— era principal. Las partes llevaban más de un año negociando el contrato de compraventa del inmueble. De la prueba presentada surge, con meridiana claridad, que A & W quería terminar este asunto de una vez y descontinuar la litigación. Para lograr esto era necesario que se otorgaran las escrituras dentro del término pactado para el cumplimiento. Tal cumplimiento estaba íntimamente relacionado con la esencia del contrato y, por consiguiente, su contravención le confirió a A & W la facultad de exigir su cumplimiento específico o resolverlo con el resarcimiento de los daños y perjuicios ocasionados, más los intereses correspondientes. A & W optó por lo segundo. Cabe señalar que Neca tampoco mostró razones justificadas para que no se hubiesen otorgado las escrituras en la fecha pactada. El tribunal de instancia no erró al decretar la resolución del contrato de transacción.

Como consecuencia, A & W tiene derecho a la indemnización por los daños ocasionados por el incumplimiento, si

algunos, más los intereses. Le corresponde a ésta probar la existencia de dichos daños.

Por todo lo antes expuesto, *se dictará sentencia para confirmar la emitida por el Tribunal Superior, Sala de Aguadilla, de 18 de septiembre de 1992 y se devolverá el caso al foro de instancia para que continúe los procedimientos de forma compatible con lo aquí expresado.*

El Juez Presidente Señor Andréu García y el Juez Asociado Señor Rebollo López disintieron sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri concurrió sin opinión escrita.