# 2009 DTA 71

### TRIBUNAL DE APELACIONES
### REGIÓN JUDICIAL DE SAN JUAN
### PANEL II

LUIS CASTRO CHANG
Demandante-Apelado

v.

THE SAN JUAN STAR, INC., SR. GERARDO ANGULO Y ASEGURADORA X
Demandados-Apelantes

Núm. KLAN-2007-01874

San Juan, Puerto Rico, a 27 de abril de 2009

Panel integrado por su Presidenta, la Juez García García,
la Juez Varona Méndez y el Juez Cabán García

Varona Méndez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se nos solicita que revisemos una sentencia dictada por el Tribunal de Primera Instancia, Sala de San Juan, en la que se declaró con lugar una demanda presentada por el apelado, Sr. Luis Castro Chang, contra la apelante, The San Juan Star, Inc., su presidente, el Sr. Gerardo Angulo y la aseguradora X.

Por los fundamentos que se discuten a continuación, se confirma la sentencia apelada.

### I

Para finales del año 2000, el apelado sometió al Sr. Gerardo Angulo una propuesta escrita en la que desarrollaba un plan de mercadeo y estrategia para la distribución, venta de periódicos y anuncios del periódico vespertino El Star Extra. El principal objetivo de la propuesta era aumentar la circulación de dicho periódico. En

su propuesta, el apelado sugirió distribuir 10,000 ejemplares diarios a partir de mayo de 2001; el 80% de los periódicos serían vendidos y el 20% sería distribuido en los comercios. La distribución del periódico estaría a cargo del apelado, quien devengaría un sueldo de $1,500 semanales y el 80% de las ganancias del periódico luego de los gastos de operación. A partir de mayo de 2001 se le pagaría a The San Juan Star, Inc. 10 centavos por cada periódico impreso hasta 3,000 periódicos diarios. El acuerdo estaría vigente por 5 años.

El Sr. Gerardo Angulo sostuvo una reunión con el apelado para discutir en detalle la propuesta. Posteriormente el Sr. Angulo escribió en la misma propuesta que entregaría 6,000 ejemplares diarios al apelado para distribución y venta y que éste pagaría al San Juan Star $2,650.00 semanales a partir de mayo de 2001. Así pues, desde enero de 2001, el apelado comenzó a recibir El Star Extra diariamente para su distribución.

El apelado utilizó su residencia como oficina administrativa y centro de operaciones para coordinar los esfuerzos de ventas de anuncios y distribución del periódico. También utilizó sus propios equipos de oficina, imprimió facturas, tarjetas de presentación y cubrió el pago de los vendedores de anuncios y de los vendedores de periódicos. El apelado invirtió unos $13,000.00 de sus propios recursos para la organización y funcionamiento de la red de distribución del periódico vespertino en cuestión.

El apelado estuvo operando hasta marzo de 2001 cuando el Sr. Angulo dejó de entregarle los 6,000.00 ejemplares que debía de recibir diariamente y le impidió el acceso a las instalaciones de The San Juan Star, Inc. Ante estas circunstancias, el *21 de noviembre de 2001*, el apelado presentó una demanda sobre incumplimiento contractual y daños y perjuicios contra The San Juan Star, Inc., su presidente y su compañía aseguradora no identificada.

En dicha demanda, el apelado alegó que a principios del 2001 había suscrito un contrato con The San Juan Star, Inc. para distribuir y promover un periódico vespertino conocido como El Star Extra. Planteó el apelado que The San Juan Star, Inc. había cancelado dicho contrato injustificadamente, ocasionándole la pérdida de una inversión de $13,000.00, otros $390,000.00 en concepto de expectativa de ingresos, $408,000.00 por el 80% de ganancia proyectada dejada de devengar conforme a los términos del acuerdo y $50,000.00 en concepto de angustias mentales. El *1ro. de noviembre de 2002*, el apelado presentó una moción de desistimiento sin perjuicio, con el propósito de realizar una investigación más profunda del caso. El *5 de noviembre de 2002*, el foro de primera instancia ordenó el archivo sin perjuicio de la reclamación.

El *10 de enero de 2003*, el apelado presentó nuevamente la demanda con las mismas alegaciones. The San Juan Star, Inc. y el Sr. Gerardo Angulo presentaron contestación a la demanda en la que negaron las alegaciones del apelado y afirmaron que la reclamación estaba prescrita. Luego del descubrimiento de prueba y la conferencia con antelación al juicio, se celebró el juicio en su fondo. En dicha vista, prestaron testimonio el apelado, el Sr. Salvador Hasbun Martínez y el Sr. Gerardo Angulo Meftas.

Tras evaluar la prueba presentada, el foro apelado dictó sentencia en la que determinó que no existía contrato entre las partes. No obstante, declaró con lugar la demanda utilizando la doctrina de *culpa in contrahendo* como fundamento. Inconforme con las determinaciones del foro primario, The San Juan Star, Inc. presentó recurso de apelación. En éste, señala que erró el Tribunal de Primera Instancia al conferir un remedio al demandante bajo una causa de acción que no estaba alegada en la demanda y bajo un cuadro procesal en el cual no medió solicitud de enmienda de índole alguna por parte del apelado de las alegaciones de la demanda. Asimismo, señala que en la medida en que el Tribunal de Primera Instancia enmendó las alegaciones de la demanda a base de la prueba sin haber mediado ruego a esos efectos por el apelado, el tribunal debió considerar las defensas afirmativas de la apelante. Entre dichas defensas, señala la de prescripción, puesto que al ser la reclamación por *culpa in contrahendo* y por tanto una reclamación en daños y perjuicios bajo el Art. 1802 del Código Civil de Puerto Rico, dicha reclamación debió también ser denegada por haber estado prescrita. Aduce, además, que erró el tribunal de instancia al determinar que aplicaba la doctrina de *culpa in contrahendo* y que los hechos probados demostraron

19

que la parte demandada incurrió en responsabilidad bajo dicha teoría y al imponer sobre la parte demandada la suma de $2,000.00 en honorarios de abogado.

Con el beneficio de la comparecencia del apelado y el derecho aplicable, resolvemos.

## II

*Las enmiendas a las alegaciones*

Nuestro ordenamiento concede amplia discreción al Tribunal de Primera Instancia para reglamentar los procedimientos ante sí de forma que se logre una solución rápida, justa y económica de los litigios. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. IV, R. 1. *Chévere v. Levis Goldstein,* 150 D.P.R. 525 (2000), **2000 J.T.S. 56**, a la pág. 853; *Amaro González v. Firt Fed. Savs.,* 132 D.P.R. 1042, 1054 (1993); *Lluch v. España Service Sta.,* 117 D.P.R. 729, 743-744 (1986).

Dicha facultad, desde luego, incluye la concesión de permiso para enmendar una demanda, cuando ello es solicitado por una parte. Según ha expresado el Tribunal Supremo de Puerto Rico, este tipo de solicitudes han de ser acogidas con liberalidad. Véase, *Álamo v. Supermercado Grande, Inc.,* 158 D.P.R. 93 (2002); *Cruz Cora v. UCB/Trans Union P.R. Div.,* 137 D.P.R. 917, 922 (1995); *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 D.P.R. 860, 867-868; *Ortiz Díaz v. R & R Motor Sales Corp., supra; Pérez Cruz v. Hosp. La Concepción, supra.*

La Regla 13.2 contempla incluso que las alegaciones sean enmendadas durante el juicio del caso, mediante la evidencia presentada, y ordena que el permiso para introducir una enmienda en esta etapa tan tardía también sea concedido *"liberalmente"*, 32 L.P.R.A. Ap. III, R. 13.2.

Las enmiendas a una demanda pueden ampliar las causas de acción presentadas originalmente, añadir nuevas causas de acción o nuevas partes al procedimiento. *Cruz Cora v. UCB/Trans Union P.R. Div., supra; Ortiz Díaz v. R & R Motor Sales Corp., supra.*

Lo anterior, no quiere decir que las partes gocen de facultad irrestricta de enmendar sus alegaciones a su antojo. Al determinar si se permite o no una enmienda a las alegaciones, el Tribunal Supremo de Puerto Rico ha indicado que debe considerarse el momento en que se solicita, su impacto para la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original, el perjuicio que conllevaría para la otra parte y sus méritos intrínsecos. *Álamo v. Supermercado Grande, supra; Ortiz Díaz v. R & R Motor Sales Corp.,* 131 D.P.R. a las págs. 836-837 (1992); *Vidal, Inc. v. Suro,* 103 D.P.R. 793, 796 (1976); *Torres Cruz v. Municipio,* 103 D.P.R. 217, 220 (1975); véase, además, *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20, 29-30 (1986).

*Prescripción*

La figura de la prescripción en nuestro ordenamiento jurídico es una forma de extinción de derechos. La prescripción es materia sustantiva y no procesal. *Vera Morales v. Bravo Colón,* 161 D.P.R. 301 (2004. La prescripción extintiva se deriva de la inacción del titular de un derecho por un período de tiempo determinado que tiene como consecuencia que se extingan sus derechos o causas de acción. La prescripción extintiva está enmarcada en la presunción legal de abandono. *García Aponte et al. v. E.L.A. et al.,* 135 D.P.R. 137, 142 (1994).

El propósito de la prescripción extintiva estriba en evitar litigios difíciles de adjudicar por la antigüedad de las reclamaciones, hecho que podría causar que se deje a una de las partes en un estado de indefensión. *Nazario v. E. L.A.,* 159 D.P.R. 799 (2003). En cuanto a la prescripción extintiva de las acciones derivadas de la responsabilidad civil por daños y perjuicios, el Código Civil dispone en su Art. 1868 un plazo de un año para llevar a cabo la causa de acción. 31 L.P.R.A. sec. 5298. Por su parte, el Artículo 1864 del Código Civil, 31 L.P.R.A. sec. 5294,

impone el término prescriptivo de 15 años para las acciones personales en las que la ley no especifica término, como lo es el caso de las que surgen de las obligaciones contractuales.

En cuanto a la responsabilidad civil extracontractual, existen dos vertientes en la consecución de un daño: la vertiente material u objetiva del daño y la vertiente cognoscitiva del daño. La material u objetiva existe en la realidad física del daño aunque el perjudicado no la conozca. *Ojeda*, 137 D.P.R., a la pág. 323. Por su parte, la cognoscitiva se refiere al conocimiento que tiene la víctima del daño que ha sufrido. *Id.* La doctrina cognoscitiva establece que el período prescriptivo de una acción por daños y perjuicios comienza a transcurrir desde que el agraviado conoció el daño y quién se lo causa. *Santiago v. Ríos Alonso*, 156 D.P.R. 181 (2002).

El Tribunal Supremo ha enfatizado la importancia de que el perjudicado conozca el menoscabo sufrido para así poder computar el término prescriptivo:

*"No cabe duda que hemos acogido ya en Puerto Rico la tendencia liberal en la doctrina civilista en lo relativo a la prescripción de las acciones de daños y perjuicios. Conforme a esa tendencia, por consideraciones de justicia, se estima que el término para ejercer acciones corre a partir, no desde que se sufre el daño reparable, sino desde que se conocen los tres elementos necesarios para ejercer la acción."*

*Vera v. Dr. Bravo*, 161 D.P.R. 308 (2004).

La prescripción de las acciones puede ser interrumpida por su ejercicio en los tribunales, por reclamación extrajudicial del acreedor o por cualquier acto de reconocimiento de la deuda por el deudor. Art. 1873, 31 L.P.R.A. sec. 5303. La interrupción de la prescripción se fundamenta en la actividad o ruptura de la inercia del perjudicado. *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740, 751 (1992). El Tribunal Supremo ha expresado que *[e]l acto interruptivo representa la manifestación inequívoca de una voluntad contraria al mantenimiento de la situación inerte manifestada con anterioridad a que el plazo de deliberación se agote. García Aponte*, 135 D.P.R., a la pág. 143.

El Tribunal Supremo de Puerto Rico ha resuelto que cuando la parte demandante desiste voluntariamente de su acción, sin perjuicio, se interrumpe el término prescriptivo, comenzando a contarse de nuevo íntegramente desde que terminó definitivamente la acción ejercitada. *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 D.P.R. 550, 562 (1987). La norma es que la prescripción de las acciones puede ser interrumpida por, entre otras formas, el ejercicio de la acción ante los tribunales. 31 L.P.R.A. sec. 5303; *Tenorio v. Hospital Dr. Pila*, 159 D.P.R. 777, 784 (2003); *Mun. de San Juan v. Bosque Real, S.E.*, 158 D.P.R. 743, 774 (2003); *Agosto v. Mun. de Río Grande*, 143 D.P.R. 174, 184 (1997).

En estos casos, la interrupción *se extiende por todo el tiempo que dure el trámite judicial, cualesquiera que sean las vicisitudes posteriores a la presentación. Agosto v. Mun. de Río Grande*, 143 D.P.R. a la pág. 181; *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 D.P.R. 550, 562 (1987); *Durán Cepeda v. Morales Lebrón*, 112 D.P.R. 623, 625-626 (1982); *Moa v. E.L.A.*, 100 D.P.R. 573, 590-591 (1972); *Feliciano v. A.A.A.*, 93 D.P.R. 655, 659-661 (1966).

*Honorarios de abogado*

La Regla 44.1(d) de Procedimiento Civil dispone:

*"Regla 44.1. Las costas y honorarios de abogado*

....

21

*(d) Honorarios de abogado - En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.*

*Los honorarios de abogado se conceden a la parte, son parte de la sentencia a favor del litigante y no se conceden para compensar al abogado. Colón v. Amer. Life & Cas. Co., 110 D.P.R. 772, 775 (1981). La imposición de honorarios de abogado y su cuantía es discrecional del Tribunal." Revlon Realistic, Inc. v. Las Américas Trust Company*, 135 D.P.R. 363, 376 (1994).

El concepto de temeridad no está definido en la Regla 44.1 (d), *supra*. No obstante, la jurisprudencia del Tribunal Supremo de Puerto Rico aclara que la temeridad consiste en: *[u]na actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia.* La temeridad sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio. *Blas v. Hosp. Guadalupe*, 146 D.P.R. 267, 334 (1998). En términos generales, se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Torres Ortiz v. E.L.A.,* 136 D.P.R. 556, 565 (1994).

Al interpretar la Regla 44.1 (d), *supra*, el Tribunal Supremo de Puerto Rico, en *Fernández v. San Juan Cement, Inc.*, 118 D.P.R. 713 (1987), estableció que existe temeridad en las siguientes situaciones:

*"a) hacer necesario un pleito que se pudo evitar o prolongar innecesariamente un pleito;*

*b) causar que otra parte incurra en gestiones evitables; contestar el demandado una demanda y negar su responsabilidad total, aunque la acepte posteriormente;*

*c) defenderse el demandado injustificadamente de la acción; si el demandado en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a·las peticiones del demandante y no admite francamente su responsabilidad, limitando la controversia a la fijación de la cuantía a ser concedida;*

*d) si el demandado se arriesga a litigar un caso del que se desprendía prima facie su negligencia y negar un hecho, que le consta es cierto, al que hace la alegación."*

Ahora bien, determinada la existencia de temeridad, la condena de honorarios es imperativa. Una partida de honorarios concedida por un Tribunal de Primera Instancia no será variada en apelación a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. *Ramírez Anglada v. Club Cala de Palmas*, 123 D.P.R. 339, 350 (1989).

El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Fernández v. San Juan Cement Co, Inc., supra*, a la pág. 718. Además, la imposición de honorarios de abogado tiene como propósito disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte.

*Culpa in contrahendo*

Es principio básico del derecho de obligaciones que nadie está obligado a contratar. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1978, T. II, Vol. I, pág. 226; *Prods. Tommy Muñiz v.*

*COPAN*, 113 D.P.R. 517, 526 (1982). Ello *"tiene como consecuencia que las partes no se encuentren obligadas a proseguir con las negociaciones hasta perfeccionar el contrato, sino que están en libertad de contraer el vínculo o retirarse, según convenga a sus mejores intereses."* Prods. Tommy Muñiz v. COPAN, ante, citando a Manuel Albaladejo, *Derecho Civil*, 2da ed., T. I, pág. 317.

Sin embargo, aun en circunstancias en las que no se ha perfeccionado un contrato, nuestro ordenamiento reconoce que:

*"[l]as negociaciones preliminares generan una relación de carácter social que impone a las partes el deber de comportarse de acuerdo con la buena fe, que no impera solamente en las relaciones jurídicas ya establecidas o constituidas, sino también en las relaciones derivadas de un simple contrato social."* Prods. Tommy Muñiz v. COPAN, supra, en las págs. 526 a 527 citando a Díez Picazo en *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. I, en la pág. 191. (Énfasis suplido)

La doctrina reconoce esta etapa precontractual como la de los *"tratos previos"*. Según Albaladejo:

*"[h]ay tratos previos cuando a la emisión de la oferta precede un período de tanteos preliminares, en los que ambas partes o una de ellas (pues basta que la intervención de la otra se limite a apreciar lo que somete a su consideración aquélla) hacen cálculos y valoran posibilidades, para señalar los eventuales términos en los que cabría o convendría concluir el contrato; pero sin proponer en firme una a la otra su conclusión en tales o cuales condicionales definiciones determinadas."* Manuel Albaladejo, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, T. II, Vol. I (1989), pág. 226. Énfasis suplido.)

En palabras de Puig Brutau, *esta relación impone determinados deberes, en el sentido de estar las partes obligadas a comportarse con la buena fe necesaria y a observar la lealtad exigida por las convicciones éticas imperantes*. Puig Brutau, op. cit., en la pág. 227. Esto sujeta a las reglas de la culpa al que pone fin a la interacción de forma intempestiva.

Díez Picazo en su tratado titulado *"La Doctrina de los Actos Propios"* señala lo siguiente:

*"La buena fe, en el sentido que aquí importa, es la lealtad en el tratar, el proceder honrado y leal. Supone el guardar la fidelidad a la palabra dada y no defraudar la confianza, ni abusar de ella; supone un conducirse como cabe esperar de cuantos, con pensamiento honrado, intervienen en el tráfico como contratantes. Lo que se aspira a conseguir, se ha dicho, es que el desenvolvimiento de las relaciones jurídicas, el ejercicio de los derechos y el cumplimiento de las obligaciones, se produzca conforme a una serie de principios que la conciencia jurídica considera necesarios, aunque no hayan sido formulados."* Díez Picazo, *La Doctrina de los Actos Propios*, Barcelona, 1963, en la pág. 157.

En *Prods. Tommy Muñiz v. COPAN*, ante, el Tribunal Supremo resolvió que la responsabilidad que genera el incumplimiento con el deber de actuar de buena fe durante las negociaciones es de naturaleza extracontractual. Esta responsabilidad se fundamenta en que la suspensión injustificada de las negociaciones *"constituye un quebrantamiento de la buena fe que [...] penetra todo nuestro ordenamiento positivo [...] le impone a las partes un deber de lealtad recíproca en las negociaciones"*. Prods. Tommy Muñiz v. COPAN, supra, a la pág. 528.

Como resultado de lo anterior, nuestro más alto Foro estableció un análisis de seis (6) factores para determinar qué constituye el rompimiento injustificado o arbitrario de la negociación:

*"(1) el desarrollo de las negociaciones;*

*(2) cómo comenzaron;*

*(3) el curso que siguieron;*

*(4) la conducta de las partes durante su transcurso;*

*(5) la etapa en que se produjo el rompimiento, y*

*(6) las expectativas razonables de las partes en la conclusión del contrato, así como cualquier otra circunstancia pertinente conforme los hechos del caso sometidos a escrutinio judicial.” Íd.*, a la pág. 530.

Sin embargo, debido a que las negociaciones que anteceden al contrato pueden ser de variada índole, la responsabilidad *precontractual* puede emanar de distintas fuentes. De este modo, se puede imponer responsabilidad al amparo de la doctrina de *culpa in contrahendo*, no sólo por el rompimiento injustificado de las negociaciones, sino a base de la conducta culposa, dolosa o fraudulenta de la parte demandada. *Vilá & Hnos., Inc. v. Owens*, 117 D.P.R. 825 (1986); *Colón v. Glamorous Nails & Boutique*, **2006 J.T.S. 25**; 167 D.P. R. ___ (2006). El Tribunal Supremo, al analizar la doctrina de responsabilidad pre contractual o *culpa in contrahendo*, ha señalado que es necesario considerar cuál es la figura jurídica -culpa, dolo, fraude, buena fe, abuso del derecho u otros principios generales del derecho- que mejor responde a la adecuada solución de un caso donde se alegue *culpa in contrahendo*. *Producciones Tommy Muñiz v. COPAN, supra*, a la pág. 530 (1982).

En resumen, dicho caso estableció que las negociaciones preliminares generan una relación de carácter social que impone a las partes el deber de comportarse de acuerdo con la buena fe. Se considera como un hecho ilícito el rompimiento injustificado de las negociaciones, porque constituye un quebrantamiento de la buena fe, la cual penetra todo nuestro ordenamiento positivo. La buena fe impone a las partes un deber de lealtad recíproca en las negociaciones; por tal razón, la doctrina de culpa *in contrahendo* impone responsabilidad de tipo extracontractual a quien actúa culposa, dolosa o fraudulentamente durante los tratos preliminares.

### III

Nos señala The San Juan Star, Inc. que erró el Tribunal de Primera Instancia al no desestimar la causa de acción presentada por el apelado por haber estado prescrita. Sostiene que, al haber determinado que no existía un contrato entre las partes, el término prescriptivo aplicable a la controversia es de un año. En vista de ello, es que sostiene que la "*enmienda*" a las alegaciones a destiempo por parte del foro primario, tuvo el efecto de privarle de levantar su defensa de prescripción. Así pues, analizaremos si, tomando como base el período de 1 año de prescripción, la reclamación estaba prescrita.

El rompimiento de la relación entre las partes ocurrió en marzo de 2001. El apelado presentó inicialmente su reclamación contra The San Juan Star, Inc. el 21 de noviembre de 2001, es decir, dentro del término prescriptivo de un año para presentar su reclamación. La presentación de la demanda tuvo el efecto de interrumpir el término prescriptivo. Posteriormente, el apelado presentó una moción de desistimiento sin perjuicio de la reclamación el 2 de noviembre de 2002 que fue acogida por el tribunal de instancia el 5 de noviembre de 2002. *En ese momento comenzó a transcurrir un nuevo término prescriptivo de un año.* El 10 de enero de 2003, aproximadamente 2 meses desde el desistimiento, el apelado presentó por segunda ocasión la misma demanda. Al no haber transcurrido un año desde que el apelado desistiera de la primera demanda, concluimos que la segunda demanda fue presentada oportunamente, por lo que no procedía la defensa de prescripción. Así pues, concluimos que, para fines del error señalado, no se menoscabó ningún derecho del apelado a insistir en su defensa de prescripción, ya que ésta no procede.

Señala The San Juan Star, Inc., además, que erró el tribunal de instancia al conferir un remedio al apelado bajo una causa de acción que no estaba alegado en la demanda y al determinar que la doctrina de culpa *in contrahendo* era de aplicación al caso. Por estar ambos señalamientos de error intrínsecamente relacionados, los

discutiremos en conjunto.

El Tribunal Supremo, en *Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 D.P.R. 860 (1995), resolvió que independientemente de los remedios contenidos en la súplica, el tribunal concederá en su sentencia el remedio a que tenga derecho la parte a cuyo favor se dicte, aun cuando ésta no lo haya solicitado. Asimismo, acotó el Tribunal en dicho caso que cualquier defecto en la denominación del pleito o en la súplica del remedio no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba.

Ciertamente, en el caso ante nos, la demanda expresa de forma clara y sucinta los hechos que dan lugar a la causa de acción. Asimismo, se desprende de la sentencia dictada que el foro primario concedió algunos de los remedios solicitados por la parte apelada. Por otro lado, en atención a la norma de que se recurre de la sentencia y no de sus fundamentos, este foro atenderá el resultado de la sentencia apelada en términos de su procedencia en derecho, independientemente de los fundamentos que pueda haber expresado el tribunal adjudicador. *Banco de la Vivienda v. Caro Ortiz,* 130 D.P.R. 730, 737 (1992); *El Vocero v. Junta de Planificación,* 121 D.P.R. 115, 126 (1988).

Por ello, analizamos los factores a evaluar dispuestos por el Tribunal Supremo de Puerto Rico en *Muñiz v. COPAN, supra,* sobre la aplicación de la doctrina de culpa *in contrahendo,* son: (1) el desarrollo de las negociaciones, (2) cómo comenzaron, (3) el curso que siguieron, (4) la conducta de las partes durante su transcurso, (5) la etapa en que se produjo el rompimiento, y (6) las expectativas razonables de las partes en la conclusión del contrato, así como cualquier otra circunstancia pertinente conforme los hechos del caso sometidos a escrutinio judicial. De las alegaciones contenidas en la demanda, las declaraciones del apelado en la vista en su fondo y los documentos presentados en evidencia en el juicio en su fondo, se desprende que el Sr. Angulo, en su carácter de presidente de The San Juan Star, Inc., recibió una propuesta preparada por el apelado para la distribución y mercadeo del periódico vespertino The Star Extra. (Véase la tercera alegación de la demanda). El Sr. Angulo se reunió con el apelado para discutir la propuesta y aprobó una propuesta enmendada. (Véase anejo 5 del recurso de apelación). The San Juan Star, Inc. proveyó al apelado entre 4,000 y 6,000 periódicos cinco días a la semana en el período entre enero y marzo de 2001. (Véase transcripción de la vista del 18 de septiembre de 2006 del juicio en su fondo a la pág. 11) Durante esos meses, el apelado invirtió $13,000.00 para la distribución y mercadeo del periódico Star Extra. (Véase la séptima alegación de la demanda). Desde marzo de 2001, el Sr. Angulo ordenó que no se le permitiera al apelado acceso a las facilidades de The San Juan Star, Inc. y dejó de proveerle los periódicos sin justificación alguna. (Véase transcripción la vista del 18 de septiembre de 2006 del juicio en su fondo a la pág. 12 y sexta alegación de la demanda).

El Tribunal de Primera Instancia concluyó que Sr. Angulo, en su carácter de Presidente de The San Juan Star, Inc., autorizó al apelado a la distribución del periódico The Star Extra y a la venta de anuncios. Es a partir de esa autorización que el apelado entendió que su propuesta de contrato en general había sido aprobada y procedió con entusiasmo a trabajar en el desarrollo e implementación de la misma. El foro de instancia determinó en su sentencia que el Sr. Angulo no hizo nada para aclarar los límites y alcance de su aprobación por el período de tres meses y permitió que el apelado desplegara esfuerzos e incurriera en gastos personales. Determinó, a base de la prueba aportada, que los gastos incurridos por el apelado fueron en concepto de equipo de oficina, materiales, electricidad, pago de nómina, comisiones a vendedores de anuncios y fueron valorados por el tribunal de instancia en $13,000.00. (Véase sentencia apelada, págs. 20-22 del anejo del recurso de apelación).

A base de lo anterior, no erró el Tribunal de Primera Instancia al aplicar la doctrina de culpa *in contrahendo* en el caso de marras. Asimismo, concluimos que el remedio concedido por tribunal de instancia se encuentra sustentado por las alegaciones y la evidencia que estuvo ante su consideración por lo que no intervendremos con éste.

En cuanto a los honorarios de abogado, nos plantea The San Juan Star, Inc. que no ha sido temerario por lo que nos solicita que se le releve de tal pago.

Es harto conocido que la determinación de temeridad como sanción está adscrita a la discreción del juez que dicta sentencia. *Asociación de Condóminos v. Trillas Reyes*, 120 D.P.R. 574 (1988). Esa determinación, al igual que todo ejercicio de discreción, goza de una presunción de corrección y es acreedora de gran deferencia en apelación. *Pérez Cruz v. Hospital La Concepción*, 115 D.P.R. 271 (1984). En ausencia de una demostración por la parte apelante de que se ha cometido un abuso de discreción, no revisaremos esta determinación. *Montañes Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38, 40 (1962).

The San Juan Star, Inc. se ha limitado a alegar que no ha sido temerario y que el foro apelado erró en la aplicación del estado de derecho vigente en cuanto a la imposición de honorarios de abogado. La mera alegación de que con "*un repaso de la sentencia y del historial procesal de este caso claramente revela que el Tribunal de Primera Instancia abusó...[de] su discreción*" es insuficiente para poner a este Tribunal en posición de revisar la determinación del foro primario. En ausencia de elementos que nos lleven a concluir que estamos ante un abuso de discreción, reconocemos deferencia a la imposición de honorarios de abogado por parte del Tribunal de Primera Instancia.

**IV**

Por los fundamentos antes discutidos, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones