ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LUNA RESIDENTIAL II LLC<br><br>Apelado<br><br>v.<br><br>RAYFRAN, INC.; FRANCISCO JOSÉ FERNÁNDEZ, por sí y como Miembro y Alabacea de la Sucesión de MARIBEL SÁNCHEZ RODRÍGUEZ, como Fiduciario y Fideicomisario del Fideicomiso Testamentario RIVERA SÁNCHEZ; LA SUCESIÓN DE MARIBEL SÁNCHEZ RODRÍGUEZ compuesta por FRANCISCO JOSÉ RIVERA SÁNCHEZ, JOSÉ ENRIQUE RIVERA SÁNCHEZ y FRANCISCO JOSÉ RIVERA FERNÁNDEZ en la Cuota Viudal Usufructuaria; FULANO(A) DE TAL Y SUTANO(A) DE TAL como posibles HEREDEROS DESCONOCIDOS DE MARIBEL SÁNCHEZ RODRÍGUEZ<br><br>Apelantes | KLCE202301053 | CERTIORARI (se acoge como *Apelación*)[1] procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br>_____<br>CIVIL NÚM.: D2CD2017-0008<br>Salón: 201<br>_____<br>SOBRE:<br><br>COBRO DE DINERO Y EJECUCIÓN DE HIPOTECA |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Rodríguez Casillas y el Juez Salgado Schwarz.

Salgado Schwarz, Carlos G., Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 7 de diciembre de 2023.

Comparece ante nos, el Sr. Francisco J. Rivera Fernández, el Sr. Francisco J. Rivera Sánchez y el Sr.

_____

[1] Se acoge como *Apelación* por ser el recurso adecuado para revisar la determinación impugnada y se mantiene su clasificación alfanumérica para efectos de economía procesal.

Número Identificador

RES2023_____

José E. Rivera Sánchez (en conjunto parte apelante), y nos solicitan que revoquemos una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI o foro primario) el 23 de junio de 2023, notificada en esa misma fecha. Por medio de dicho dictamen el TPI determinó que nunca se perfeccionó un contrato transaccional entre las partes y, en consecuencia, desestimó la *Reconvención* presentada por la parte apelante.

Por los fundamentos que exponemos a continuación, **confirmamos** la sentencia apelada.

-I-

A continuación, exponemos el tracto procesal conforme surge del expediente ante nuestra consideración.

El 9 de enero de 2017, Banco Santander Puerto Rico (BSPR o parte apelada) presentó una *Demanda*[2] sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria, en contra del señor Francisco J. Rivera Fernández, la Sucesión de Maribel Sánchez Rodríguez compuesta por: Francisco J. Rivera Sánchez, José E. Rivera Sánchez y Francisco J. Rivera Fernández, y otros demandados. En síntesis, alegó que la causante Maribel Sánchez Rodríguez y el Sr. Francisco J. Rivera Fernández habían suscrito un pagaré a favor de Santander Mortgage Corporation o a su orden, por la suma principal de $2,175,000.00, más intereses desde dicha fecha hasta el pago total del principal a razón de 5 ¾% de interés anual sobre el balance adeudado. Además, proveía para pagar recargos por demora equivalentes a 5% de la suma de

---

[2] Apéndice del Recurso, págs 1-4.

aquellos pagos con atrasos en exceso de 15 días calendario de la fecha de vencimiento, y una suma de $217,500.00, para costas, gastos y honorarios de abogados en caso de reclamación judicial.

Conforme a la demanda presentada, el 31 de mayo de 2014, las partes otorgaron la Escritura de Modificación de Hipoteca Núm. 111,[3] mediante la cual se redujo la hipoteca antes referida por la cantidad de $336,003.49, resultando en un nuevo principal por la cantidad de $1,838,996.51 al 5.25% de interés anual sobre el balance adeudado. BSPR arguyó, que el último pago realizado por la parte apelada fue el correspondiente al pago vencedero el 1 de mayo de 2016, por lo que había incurrido en el incumplimiento de su obligación de pagar en plazos mensuales el principal y los intereses según acordado. Así pues, alegó que la parte apelante adeudaba la suma de $1,788,502.00 por concepto de principal, más intereses al tipo pactado de 5.25% anual desde el 1 de mayo de 2016, más los $217,500.00 pactados para costas, gastos y honorarios de abogado.

El 20 de febrero de 2018, la parte apelante presentó una *Contestación a Demanda*.[4] En síntesis, negaron la mayoría de las alegaciones contenidas en la *Demanda*, y levantaron varias defensas afirmativas.

El 21 de junio de 2019, BSPR presentó una *Solicitud de Autorización Para Enmendar Demanda*.[5] Ello, con el fin de incluir en la *Demanda* a Rayfran, Inc., como parte demandada por haber advenido en conocimiento de que además de ser titular de la propiedad objeto de la controversia, dicha compañía también era deudora

---

[3] *Id.*, págs. 24-34.
[4] *Id.*, págs. 10-13.
[5] *Id.*, págs. 19-21.

conforme al *Acuerdo de Modificación para Prestamos de Banco Santander de Puerto Rico.*

El 3 de septiembre de 2019, BSPR presentó una *Moción en Cumplimiento de Orden, Informativa y Solicitud de Remedios*.[6] En ella, solicitó la continuación de los procedimientos ya que adujo que la parte apelante no formalizó la transacción que le fuera aprobada.

Por su parte, el 10 de septiembre de 2019, la parte apelante presentó una *Moción en Cumplimiento de Orden*.[7] En síntesis, alegó que fue BSPR quién incumplió con los acuerdos conducentes para poder llevar a cabo la transacción. Ello, al exigir la firma de documentos con información incorrecta el día antes de la fecha seleccionada para realizar el cierre y negarse a corregir los mismos. Añadió, que luego de haber confirmado su comparecencia a la propiedad de la parte apelante para llevar a cabo el cierre el 23 de agosto de 2019, BSPR no se presentó. Alegó, que la transacción se podía llevar a cabo si BSPR cumplía con realizar las correcciones señaladas oportunamente, por lo que solicitó al TPI que ordenara a las partes retomar la transacción para finalizarla.

El 8 de octubre de 2019, la parte apelante presentó una *Contestación a la Demanda Enmendada y Reconvención*.[8] Mediante la misma, negó la mayoría de las alegaciones de la *Demanda* y presentó varias defensas afirmativas. Además, incluyó una *Reconvención* en la cual alegó que BSPR había aceptado una propuesta de "short payoff/quita" por la cantidad de $2,100,000.00, la cual

---

[6] *Id*., pág. 41.
[7] *Id*., págs. 43-44.
[8] *Id*., págs. 47-53.

había sido firmada y enviada oportunamente, perfeccionándose así, un contrato de compraventa entre las partes. Arguyó, que se pautó la celebración del cierre para la mañana del 23 de agosto de 2019, en la oficina del Sr. Francisco J. Rivera Fernández, no obstante, nunca llegó el representante del banco, ni se comunicó con estos. Añadió que las actuaciones de BSPR constituyeron un incumplimiento de contrato, constitutivo de dolo grave que lo hacía responsable ante el Sr. Francisco J. Rivera Fernández por los daños y perjuicios causados, los cuales estimó en una cantidad no menor de $2,500,000.00.

Por su parte, el 23 de octubre de 2019, BSPR presentó una *Solicitud de Desestimación de Reconvención*.[9] En ella, alegó que la Regla 408 de las Reglas de Evidencias, excluía toda evidencia relativa a actuaciones y/u ofertas habidas durante las conversaciones transaccionales, por lo que solicitó la desestimación de la *Reconvención*.

Así las cosas, el 25 de febrero de 2020, el TPI emitió una *Sentencia Parcial*.[10] Mediante dicho dictamen, el foro primario autorizó la enmienda a la *Demanda*, ordenó el desistimiento sin perjuicio en cuanto a Fulano(a) de Tal y Sutano(a) de Tal a tenor con la Regla 39.1 de las de Procedimiento Civil y ordenó la desestimación de la *Reconvención* sin oposición, y una sustitución de parte solicitada por BSPR.

El 28 de julio de 2020, la parte apelante presentó una *Moción en Solicitud de Determinaciones de Hechos y*

---

[9] *Id.*, págs. 56-57.
[10] *Id.*, págs. 60-61.

*Reconsideración de Sentencia Parcial*.[11] En síntesis, alegó que contrario a lo alegado por BSPR en torno a que lo que hubo entre las partes fueron meras conversaciones transaccionales, el contrato suscrito entre las partes específicamente establecía que BSPR había aceptado la propuesta de "short payoff/quita" por la cantidad de $2,100,000.00 y se obligó a liberar y endosar los pagarés originales a favor del Sr. Francisco J. Rivera Fernández.

Con relación a la desestimación de la *Reconvención*, la parte apelante solicitó al TPI que reconsiderara dicha determinación. Sostuvo, que, mediante la desestimación, le estaba privando de su día en corte para exponer todas las reclamaciones y defensas que tenía en contra de BSPR y que estaban íntimamente relacionadas con la reconvención presentada, lo que tenía una consecuencia funesta ya que no se le estaba permitiendo utilizar todas las defensas relacionadas con las alegaciones que se reclamaban en la *Reconvención*.

El 21 de octubre de 2020, el foro primario emitió una *Resolución*,[12] entre otras cosas, declarando con lugar la solicitud de reconsideración presentada por la parte apelante, y ordenado la paralización de los procesos hasta el 31 de diciembre de 2020.

El 3 de mayo de 2021, la parte apelante presentó una *Urgente Moción solicitando se Dicte Sentencia Conforme a Contrato de Transacción Extrajudicial Existente entre las Partes*.[13] Mediante la misma, reiteró sus alegaciones anteriores en torno a que se había

---

[11] *Id.*, págs. 62-68.
[12] *Id.*, pág. 71.
[13] *Id.*, págs. 72-77.

perfeccionado un contrato de transacción extrajudicial el cual fue incumplido por BSPR, y que los que procedía era el cumplimiento específico de las obligaciones contraídas en el mismo.

Por su parte, el 5 de octubre de 2021, la parte apelada presentó una *Moción en Cumplimiento de Orden y Oposición a: Urgente Moción solicitando se Dicte Sentencia Conforme a Contrato de Transacción Extrajudicial.*[14] En lo pertinente, sostuvo que en efecto se habían sostenido conversaciones transaccionales con el propósito de encontrar una alternativa viable para ambas partes que pusiera fin a las controversias entre las partes. Sin embargo, la transacción no se formalizó por lo que se solicitó la continuación del proceso judicial, por ende, la premisa de la parte apelante era una equivocada. Añadió que la parte apelante había cursado tres ofertas adicionales, siendo todas rechazadas por la parte apelada. Además, reiteró su postura en cuanto a que el contrato transaccional extrajudicial no se formalizó, por lo que el 26 de agosto de 2016, BSPR envió una Carta de Cancelación de la alternativa de "short payoff/quita".

El 8 de diciembre de 2021, el TPI emitió una *Sentencia*.[15] El foro primario sostuvo que la evidencia presentada por las partes demostró que BSPR envió una carta de aprobación quita "short payoff", donde notificaba su aceptación de la intitulada propuesta para los préstamos número 9375040, 9498524 y 3004234714 por la cantidad de $2,100,000.00. Además, indicó que al recibo del pago liberaría los pagarés originales y los

---

[14] *Id.*, págs. 92-98.
[15] *Id.*, págs. 112-123.

endorsaría a favor del portador, el Sr. Francisco J. Rivera Fernández, y que, de estar de acuerdo con dicha determinación, este debía hacer llegar la carta firmada en o antes del 25 de julio de 2019, porque de lo contrario la transacción sería cancelada. A su vez, dicha misiva indicaba que una vez firmada, la autorización tendría una vigencia no mayor de 30 días calendarios a partir de la fecha de recibo en sus oficinas.

El TPI sostuvo, que quedó demostrado que el Sr. Francisco J. Rivera Fernández aceptó la referida aprobación "short payoff/quita", por lo que en cumplimiento con lo establecido firmó y entregó el acuerdo el 24 de julio de 2019, mediante correo electrónico, y BSPR confirmó el recibo del mismo en esa misma fecha. Concluyó, que el mero consentimiento de ambas partes perfeccionó el contrato de transacción extrajudicial en dicho momento. Añadió, que ambas partes acordaron la celebración del cierre para el 23 de agosto de 2016 en la oficina del Sr. Francisco J. Rivera Fernández, dentro de la vigencia de los 30 días calendarios a partir de la fecha de recibo de la carta firmada, no obstante, el representante del banco nunca llegó ni se comunicó con el Sr. Francisco J. Rivera Fernández. No fue hasta el 26 de agosto de 2019, que BSPR envió una carta de cancelación indicándole que la aprobación había vencido sin más explicación.

Con relación a las alegadas tres (3) ofertas transaccionales adicionales realizadas por el Sr. Francisco J. Rivera Fernández, el TPI concluyó que no fueron ofertas sino comunicados que este realizara al banco por su interés en que éste cumpliera con lo

acordado en el contrato de transacción. En consecuencia, el foro apelado concluyó que BSPR había incumplido con el contrato de transacción, por lo que ordenó el cumplimiento específico del referido contrato.

Insatisfecho, el 23 de diciembre de 2021, la parte apelada solicitó reconsideración de dicha determinación, la cual fue declarada No Ha Lugar.[16]

El 9 de marzo de 2022, la parte apelada presentó un una *Apelación*[17] ante el Tribunal de Apelaciones. En síntesis, alegó que el TPI incurrió en abuso de discreción al emitir una sentencia basada únicamente en las alegaciones de la parte apelante, sin que las mismas hayan sido prestadas bajo juramento, sin la celebración de una vista evidenciaria o un juicio plenario y mediante un escrito que no cumple con las formalidades de una solicitud de sentencia sumaria.

Así pues, el 6 de mayo de 2022, el Tribunal de Apelaciones emitió una *Sentencia*[18] mediante la cual dispuso que en el presente caso existían elementos de credibilidad y subjetividad que debían ser evaluados por el foro primario mediante una vista evidenciaria y no mediante el procedimiento sumario. Por ende, revocó la *Sentencia* apelada y devolvió el caso al TPI para la continuación de los procedimientos.

En atención al mandato de esta Curia, el 20 de junio de 2023, el TPI celebró una vista evidenciaria. En ella, testificó el señor Francisco J. Rivera Fernández, el señor Jaime M. Berríos Reyes y el Lcdo. Jean Paul Juliá Díaz. Como parte de los testimonios vertidos en sala, se

---

[16] *Id.*, pág. 145.
[17] *Id.*, págs. 146-171.
[18] *Id.*, págs. 173-184.

discutieron las diferentes conversaciones que hubo entre las partes, por medio de correo electrónico y cartas oficiales de BSPR, en aras de llegar a un acuerdo transaccional.

El 23 de junio de 2023, notificada en esa misma fecha el TPI emitió una *Sentencia Parcial*[19] mediante la cual resolvió que nunca se perfeccionó un contrato transaccional entre las partes y, en consecuencia, desestimó la *Reconvención* presentada por la parte apelante. Ello, debido a que surge de la prueba testifical y documental presentada en la vista evidenciaria que la oferta presentada por BSPR a la parte apelante quedó condicionada a la firma del documento requerido por el Departamento de Hacienda y el resto de los documentos correspondientes, durante el acto de cierre.

Inconforme, el 25 de septiembre de 2023, la parte apelante acudió ante este Tribunal de Apelaciones y alegó que el TPI cometió el siguiente error:

> ERRÓ EL TPI EN LA APRECIACIÓN DE LA PRUEBA ORAL Y DOCUMENTAL EN LA VISTA EVIDENCIARIA LLEVADA A CABO AL DECLARAR QUE NO SE PERFECCIONÓ UN CONTRATO DE TRANSACCIÓN EXTRAJUDICIAL ENTRE LUNA RESIDENTIAL Y EL SR. FRANCISCO J. RIVERA FERNÁNDEZ

Considerados los escritos de las partes, así como los documentos que los acompañan, procedemos a adjudicar el recurso.

## -II-

### A. El contrato de transacción.

En un contrato de transacción las partes evitan, mediante concesiones recíprocas, la provocación de un

---

[19] *Id.*, págs. 233-239.

pleito o ponen fin al que ya había comenzado.[20] Dicho contrato está regulado por el Art. 1709 del Código Civil de 1930,[21] el cual dispone que se trata de un contrato mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan un pleito o ponen fin a uno ya comenzado.[22] Las características del contrato de transacción son las siguientes: "(1) la existencia de una controversia o relación jurídica incierta litigiosa; (2) la intención de las partes de eliminar o superar esa controversia; y (3)concesiones recíprocas".[23] Siendo la reciprocidad en las prestaciones la base indispensable de este contrato.[24]

El Art. 1715 del Código Civil dispone que la transacción tendrá efecto de cosa juzgada para las partes, pero la vía de apremio sólo procederá cuando se trate de una transacción judicial.[25] En otras palabras, lo pactado por las partes debe considerarse como definitivamente resuelto y estas no pueden volver sobre ello.[26] Del artículo antes citado se desprende que un contrato de transacción puede ser de naturaleza judicial o extrajudicial.[27] La transacción judicial ocurre cuando, "una vez comenzado el pleito, las partes llegan a un acuerdo transaccional y lo hacen incorporar al proceso en curso".[28]

---

[20] *Demeter International, Inc. v. Secretario de Hacienda*, 199 DPR 706, 729 (2018) (citas omitidas).
[21] El anterior Código Civil de 1930, supra, fue derogado y sustituido por la Ley Núm. 55-2020, según enmendada. Sin embargo, el estatuto vigente al momento de los hechos era el Código Civil previo y por tanto sus disposiciones son aplicables a la controversia de epígrafe.
[22] 31 LPRA sec. 4821 (derogado); *Rodríguez, et al. v. Hospital, et al.*, 186 DPR 889, 903 (2012).
[23] *Rodríguez, et al. v. Hospital, et al.*, supra, pág. 903.
[24] *Demeter International, Inc. v. Secretario de Hacienda*, supra, pág. 730 (citando a *Municipio de San Juan v. Prof. Research*, 171 DPR 219, 240 (2007).
[25] 31 LPRA sec. 4827 (derogado).
[26] *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860, 872 (1995).
[27] *Rodríguez v. Hospital*, supra, pág. 904.
[28] *Id.*

Por otro lado, la transacción extrajudicial es "aquella que se celebra antes de que comience el pleito que se quiere evitar, o cuando una vez comenzado, las partes acuerdan una transacción sin la intervención del tribunal", para lo cual bastará el mero aviso de desistimiento del pleito, aun cuando las partes tan siquiera mencionen el acuerdo logrado entre ellas.[29] Si el caso nunca se inicia judicialmente, pero la transacción procura evitar la litigación, se aplicará al acuerdo el mismo efecto disuasivo y extintor de las causas de acción que las cuestiones transigidas pudieron generar entre los contratantes. Así lo pauta de manera diáfana el artículo 1709 del Código Civil que rige tales consecuencias cuando se otorga ese tipo de acuerdo contractual para evitar la provocación de un pleito o poner término al que había comenzado. Lo que es común a todas estas modalidades es la consecuencia jurídica que tales acuerdos provocan: todo lo transigido por las partes será cosa juzgada, como si hubiera sido adjudicada por un foro competente. Es decir, la defensa de cosa juzgada fundamentada en el contrato de transacción tiene el efecto de evitar que en un pleito posterior se litiguen nuevamente, entre las mismas partes, los asuntos ya transigidos.[30]

Todo contrato de transacción debe cumplir con los mismos requisitos que cualquier otro contrato, a saber: consentimiento, objeto y causa.[31] Así las cosas, existe el consentimiento en el contrato de transacción, ya que tiene que ser consensual entre las partes.[32] Por otro

---

[29] *Id.*
[30] 31 LPRA sec. 3343 (derogado).
[31] 31 LPRA sec. 3391 (derogado).
[32] *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 871.

lado, el objeto del contrato de transacción es la controversia existente entre las partes, ya sea de índole judicial o extrajudicial.[33] Finalmente, el litigio en si sirve como la causa del contrato de transacción judicial, así como eliminación de la controversia entre las partes mediante concesiones recíprocas entre ellos.[34]

En cuanto a su alcance, el Art. 1714 del Código Civil dispone que los contratos de transacción únicamente comprenden los objetos expresamente determinados en ellos, "o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma".[35] Por ello, el nuestro Tribunal Supremo ha sido consistente en resolver que al contrato de transacción le aplican las normas generales sobre la interpretación de los contratos cuando surja la necesidad de descubrir la verdadera intención de los contratantes, pero que los términos del contrato deben ser interpretados de forma restrictiva.[36]

Al igual que los demás tipos de contratos, las transacciones tienen fuerza de ley entre las partes y deben cumplirse al tenor de los mismos.[37] Lo anterior, siempre y cuando lo pactado mediante el contrato de transacción no sea contrario a la ley, la moral, ni el orden público.[38]

## -III-

En el presente caso, la parte apelante alegó que entre el señor Francisco J. Rivera Fernández y BSPR se

---

[33] *Id.*
[34] *Municipio de San Juan v. Prof. Research*, supra, pág. 239; Véase también, *Neca Mortg. Corp. v. A & W Dev. S.E., supra*, pág. 871.
[35] 31 LPRA sec. 4826 (derogado).
[36] *Demeter International, Inc. v. Secretario de Hacienda*, supra, pág. 731
[37] Art. 1044 del Código Civil, 31 LPRA sec. 2994.
[38] Art. 1207 del Código Civil, 31 LPRA 3372.

perfeccionó un contrato transaccional una vez este último recibió firmada la oferta que contenía la posición formal del banco emitida por la Sra. Marie Guiven.

Por su parte, la parte apelada arguyó que, conforme a lo resuelto por el foro primario, la oferta de BSPR quedó condicionada a la firma de los documentos de cierre y a los documentos requeridos por el Departamento de Hacienda.

Luego de evaluar los escritos presentados por ambas partes, la transcripción de la vista evidenciaria y la totalidad del expediente, resolvemos.

El 20 de junio de 2023, el TPI celebró una vista evidenciaria en el caso de epígrafe. Dicha vista evidenciaria fue ordenada por esta Curia para dirimir los elementos de credibilidad y subjetividad en aras de determinar si se configuró o no un contrato de transacción extrajudicial entre las partes. En ella, testificaron los señores Francisco J. Rivera Fernández, Jaime M. Berrios Reyes y el Lcdo. Jean Paul Juliá Díaz. Junto con el testimonio de estos, se admitió en evidencia cierta prueba documental que obra en el expediente de autos.

Surge del expediente que el 8 de julio de 2019, BSPR le cursó a la parte apelante un correo electrónico mediante el cual anejó una carta con fecha de 5 de julio de 2019, suscrita por la señora Marie Guiven, directora de la Unidad de Mitigación de Pérdidas del Banco Santander. Mediante dicha misiva, se le informó a la parte apelante que BSPR había aceptado su propuesta de "short payoff/quita" de los préstamos 9375040, 9498524 y 3004234714, por la cantidad de $2,1000,000.00. Además,

el comunicado antes mencionado indicaba que, de estar de acuerdo, la misma debía ser firmada y devuelta, en o antes del 25 de julio de 2019.

Surge de la prueba testifical y documental que, BSPR apercibió a la parte apelante, por medio del correo electrónico antes mencionado que, al momento del cierre se tenían que firmar unos documentos adicionales. Entre estos, se encontraba un documento requerido por el Departamento de Hacienda en virtud de la determinación administrativa núm. 16-14, que le impone la obligación al acreedor de notificar toda suma condonada. No obstante, surgió una controversia sobre la propiedad en cuestión. Ello, debido a que la parte apelante alegó que la propiedad era una residencial, mientras que BSPR sostuvo que era una propiedad de inversión.

La posición de BSPR estaba apoyada en tres puntos, a saber: 1) una certificación del CRIM que indicaba que la propiedad no disfrutaba de exención de residencia principal, 2) que de la investigación de campo surgió que la propiedad no estaba habitada y, 3) que BSPR tenía conocimiento de una demanda en la que la parte apelante informó, en su contestación a la demanda, que su residencia principal no era la propiedad en controversia.

Como resultado de las diferencias antes mencionadas, la parte apelante se negó a firmar el documento requerido por el Departamento de Hacienda, razón por la cual el cierre de la transacción no se llevó a cabo. Así pues, transcurridos los treinta días previstos por BSPR para el cierre de la transacción, este último envió una carta de cancelación el 26 de agosto de 2019.

Como antes mencionáramos, al contrato de transacción le aplican las normas generales sobre la interpretación de los contratos cuando surja la necesidad de descubrir la verdadera intención de los contratantes.

Al igual que los demás tipos de contratos, las transacciones tienen fuerza de ley entre las partes y deben cumplirse a tenor de estos. Lo anterior, siempre y cuando lo pactado mediante el contrato de transacción no sea contrario a la ley, la moral, ni el orden público.

Ciertamente, la parte apelante cumplió con su deber de devolver firmada la carta de aprobación de "short payoff/quita" antes del 25 de julio de 2019. Sin embargo, esa acción de por sí no configuró un contrato de transacción extrajudicial. Surge del expediente que la presente transacción **quedó condicionada a la firma del documento requerido por el Departamento de Hacienda y el resto de los documentos correspondientes, durante el acto de cierre**. Dicho acto no se llevó a cabo por razones atribuibles a la parte apelante. Ello, debido a que esta última se negó a firmar el documento requerido por el Departamento de Hacienda, **el cual era un requisito de ley que no podía ser obviado**. Consecuentemente, BSPR estaba impedido de continuar con la transacción antes mencionada.

En vista de que entre las partes nunca se perfeccionó un contrato de transacción, es forzoso concluir que la *Reconvención* instada por la parte apelante no tiene mérito. Esto, debido a que los alegados daños se basan en un incumplimiento de contrato que nunca se perfeccionó. Por ende, el TPI actuó correctamente al desestimar la *Reconvención*.

## -IV-

Por los fundamentos antes expuestos, **confirmamos** la *Sentencia Parcial* apelada y devolvemos el caso al foro primario para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

*Lcda. Lilia M. Oquendo Solís*
*Secretaria del Tribunal de Apelaciones*