ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| RIOP CORPORATION representado en este acto por su presidenta AGNES MARI LORENZO GONZÁLEZ T/C/P AGNES M. LORENZO GONZÁLEZ<br><br>Parte Apelada<br><br>v.<br><br>JOSÉ GONZÁLEZ LAABES<br><br>Parte Apelante | TA2025AP00332 | *Apelación*, acogida como *certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguada<br><br>Caso Núm.: AU2022CV00111<br><br>Sobre: Cumplimiento Especifico y Daños |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de noviembre de 2025.

Compareció ante este Tribunal la parte peticionaria, Sr. José González Laabes (en adelante, "señor González Laabes" o "Peticionario"), mediante un mal denominado recurso de apelación presentado el 11 de septiembre de 2025. Nos solicitó la revocación de la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Aguada (en adelante, "TPI"), el 18 de julio de 2025. Dicho dictamen fue objeto de una "**Moción de Reconsideración**" que fue declarada "No Ha Lugar" por el TPI mediante *Orden* de 27 de agosto de 2025.

En vista de lo anterior, acogemos el recurso ante nos como un auto de *certiorari*, y por los fundamentos que expondremos a continuación, *expedimos* y *confirmamos* la *Resolución* recurrida.

**I.**

El presente caso tuvo su origen el 3 de marzo de 2022, cuando RIOP Corporation (en adelante, "RIOP" o "Recurrida") presentó una "**Demanda**" de incumplimiento de contrato y daños y perjuicios dimanantes de dicho incumplimiento en contra del Peticionario. Sostuvo que el 18 de abril de 2017 las partes firmaron un contrato de arrendamiento con opción a

compraventa (en adelante, el "Contrato"). En el referido acuerdo contractual se describió la propiedad objeto del mismo de la siguiente forma:

> Local comercial con aproximadamente 13,000 pies localizado en el barrio pueblo de Rincón, carretera 115 del término municipal de Rincón, Puerto Rico con un solar con una cabida aproximadamente de Tres (3,000.00) Mil metros cuadrados. **El presente contrato incluye solar aledaño de área de taller de Mecánica al lado izquierdo de la propiedad**.[1]

Expuso que las partes pactaron que RIOP tendría la opción de compra del referido inmueble por el término de cinco (5) años al precio de ochocientos mil dólares ($800,000.00). Asimismo, alegó la Recurrida que desde la firma del Contrato ejerció el dominio sobre la propiedad completa, incluido el solar aledaño, de manera pública y con conocimiento del señor González Laabes. Así las cosas, esgrimió que en diciembre de 2021 notificó al Peticionario su intención de ejercer la opción de compra y que luego de realizar los trámites bancarios y obtener la correspondiente aprobación para la misma, el señor González Laabes les ofreció que el financiamiento fuera realizado por él mismo. Expresó que, ante la insistencia de éste, aceptó que el Peticionario fuera quien llevara a cabo el financiamiento. Argumentó que el interés al cual el banco aprobó el préstamo era al 6.25% y que el Peticionario le ofreció el 6.0%.

Habiendo acordado lo anterior, sostuvo que, durante los trámites ulteriores para finiquitar la transacción, el señor González Laabes se opuso a otorgar la correspondiente escritura de compraventa bajo el argumento de que el taller de mecánica aledaño no formaba parte de la propiedad descrita en el Contrato. Ante el atraso en concretar la transacción, la Recurrida alegó que le notificó al Peticionario que desde el mes de diciembre de 2021 estaba lista para culminar el proceso, ya fuera con el financiamiento a través de la institución bancaria o por medio del propio señor González Laabes, por lo que no tenía que continuar incurriendo en los pagos de los cánones de arrendamiento pactados.

Asimismo, agregó que el Peticionario le respondió que él se quedaría con el depósito, lo que implicó una pérdida puesto que el mismo

---

[1] *Véase*, SUMAC-TPI, entrada núm. 1 (énfasis suplido)..

debía ser devuelto ya fuera al momento de entregar la propiedad al finalizar el arrendamiento o al ejercer la opción de compra. Expuso que, a pesar de que efectuó varios acercamientos para poder llevar a cabo la compraventa, los mismos resultaron infructuosos ante la negativa del señor González Laabes de incluir el predio aledaño al solar principal en la compraventa, lo cual, constituía un incumplimiento del Contrato.

Debido al retraso y la negativa del señor González Laabes de llevar a cabo la compraventa, según estipulado en el Contrato, RIOP sostuvo que se vio en la obligación de continuar pagando los cánones de arrendamiento, gasto en el que ya no tendrían que incurrir de haberse llevado a cabo la compraventa. De igual forma, alegó que había sufrido pérdidas al verse imposibilitada de culminar la compra y así poder llevar a cabo sus planes de negocio.

Luego de múltiples trámites procesales, RIOP presentó "**Demanda Enmendada**" el 1 de septiembre de 2022. Mediante ésta, mantuvo las mismas alegaciones que consignó en la "**Demanda**" original e incluyó que a consecuencia de las actuaciones del señor González Laabes sufrió daños y perjuicios consistentes en atrasos en los proyectos; la inflación de los intereses hipotecarios, pérdidas mensuales en los gastos por los servicios de agua, ya que estaba imposibilitada de culminar las mejoras al servicio sanitario por el alto costo; y pérdidas en pagos mensuales en la energía eléctrica al verse impedida de instalar el sistema de placas solares, los cuales se valoraron en una cantidad aproximada de $350,000.00. De igual forma, acumuló una causa de acción por angustias y sufrimientos mentales.

Así las cosas, el 30 de septiembre de 2022, RIOP presentó "**Moción Solicitando Sentencia Sumaria Parcial**". Por su parte, el señor González radicó "**Oposición a Moción Solicitando Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria del Demandado José González Laabes**". Tras la presentación de una réplica por parte de RIOP y de una "**Moción Ampliando Solicitud de Sentencia Sumaria**" por parte del Peticionario, el TPI emitió *Resolución* mediante la cual denegó las solicitudes de sentencia sumaria presentadas por las partes de epígrafe,

respectivamente. Dicha determinación fue notificada y archivada en autos el 28 de febrero de 2023.

Culminado el descubrimiento de prueba y adjudicadas las mociones dispositivas, se celebró el juicio el 23 de marzo de 2023. Evaluada y aquilatada la prueba, el 21 de abril de 2023, el TPI dictó *Sentencia* mediante la cual declaró "Con Lugar" la "**Demanda Enmendada**" y ordenó al Peticionario a otorgar la compraventa de la propiedad, la cual incluía el local comercial de 13,000 pies localizado en el Barrio Pueblo de Rincón, Puerto Rico, y el solar aledaño de área de taller de mecánica al lado izquierdo de dicho inmueble.

Asimismo, el foro primario dispuso lo siguiente: (1) ordenó al señor González Laabes a efectuar la segregación, agrupación y todo trámite necesario para que se pueda llevar a cabo la compraventa del solar de 800 metros que ocupa el área de taller de mecánica al lado izquierdo y del pago de todos los trámites necesarios, escrituras, costos y honorarios de abogado para la escritura de segregación de dichos 800 metros; (2) requirió al Peticionario a efectuar el financiamiento de la propiedad a un 6.0% de interés por un término de veinte (20) años; (3) redujo del precio de compraventa los cánones de arrendamiento pagados por RIOP desde el mes de enero de 2022 hasta el momento que se otorgue la compraventa, incluyendo los pagos consignados en la Unidad de Cuentas del TPI correspondientes a los cánones de arrendamiento que depositó la Recurrida durante la duración del litigio; (4) al pago de honorarios de abogado por la cantidad de $5,000.00 por temeridad o frivolidad, ya que entendió innecesario el pleito; y (5) al pago de costas y gastos incurridos por la Recurrida.

Inconforme, el señor González Laabes presentó "**Moción Solicitando Reconsideración**". El 15 de junio de 2023, el TPI emitió *Resolución* en la que declaró "No Ha Lugar" dicha solicitud. Aún insatisfecho, el Peticionario compareció ante este Tribunal mediante el recurso de apelación núm. KLAN202300622 alegando que el foro de instancia erró al: (1) establecer en la *Sentencia* que debía financiar la compraventa por un término de veinte (20) años con un interés anual de

seis por ciento (6%), (2) resolver que los cánones de arrendamiento pagados desde enero de 2022 hasta el otorgamiento de la compraventa debían descontarse del precio de venta, incluyendo los fondos consignados, (3) imponerle la obligación de vender a RIOP el solar adyacente, (4) concluir que la Sra. Lorenzo estaba facultada para otorgar la escritura de compraventa y (5) exigirle el pago de $5,000.00 en concepto de honorarios de abogado por temeridad.

Mediante *Sentencia* de 18 de septiembre de 2023, modificamos el dictamen apelado para disponer que la obligación de financiamiento del Peticionario a favor de RIOP no debía ser fijada en veinte (20) años, ya que de la prueba desfilada en juicio no se desprende tal acuerdo. Del mismo modo, se modificó la *Sentencia* en cuanto a la reducción del precio de compraventa estipulado en el Contrato por la suma de los cánones de arrendamiento abonados por RIOP desde enero de 2022 hasta la formalización de la compraventa, incluidos los pagos consignados en el foro primario, ya que del expediente no se desprende alegación ni evidencia que sustente tal determinación, y el Contrato tampoco contiene disposición alguna sobre ese particular. El 21 de noviembre de 2023, RIOP acudió al Tribunal Supremo mediante recurso de *certiorari.* El 9 de diciembre de 2024, el máximo foro judicial denegó el auto y expidió el mandato en el presente caso.

Así las cosas, y tras múltiples incidencias procesales, el 7 de enero de 2025 RIOP presentó una "**Moción Solicitando Orden para que el señor González Segregue y Agrupe el Solar según Sentencia**" (en adelante, "Moción Solicitando Orden"), en la cual sostuvo que, para poder otorgar las escrituras de compraventa e hipoteca, el señor González Laabes debía realizar a su costo la segregación y agrupación del solar de 800 metros, parte de la finca núm. 4861 y actualmente ocupado por un taller de mecánica, así como cubrir todos los gastos, escrituras y honorarios de abogado relacionados. En vista de lo anterior, le solicitó al Tribunal que ordenara al Peticionario a llevar a cabo dichos trámites para poder formalizar la compraventa e hipoteca.

El 11 de febrero de 2025, RIOP presentó una "**Moción Urgente en Solicitud de Orden para Autorizar el Nombramiento de Agrimensor para la Segregación y Agrupación del Solar según Sentencia y el Otorgamiento de Escrituras**", mediante la cual solicitó: (1) que, una vez el TPI designara un agrimensor para el caso, los gastos relacionados sean sufragados con los fondos consignados en la Unidad de Cuentas, y (2) que, una vez aprobada la segregación y agrupación, se designara un notario para otorgar las escrituras de segregación, agrupación, compraventa e hipoteca, y se emitiera la correspondiente orden y mandamiento para que el alguacil firmara dichas escrituras en representación del señor González Laabes. En respuesta a lo anterior, el 12 de febrero de 2025, la representación legal del Peticionario presentó una "**Oposición a Moción Urgente**" a través de la cual manifestó que no había logrado comunicarse con su representado y señaló que RIOP pretendía, sin contar con su autorización ni respuesta, contratar agrimensores y notarios, así como preparar por su cuenta toda la documentación necesaria para la segregación, con la intención de que todos esos gastos fueran asumidos por su representado.

El 13 de febrero de 2025, RIOP presentó una "**Réplica a Oposición**" en la que expuso que, durante el término concedido por el foro de instancia, intentaron comunicarse con la oficina del representante legal del señor González Laabes sin obtener respuesta. Señaló que desconocía si éste había realizado alguna gestión tras la fecha de caducidad, lo que continuaba afectando sus planes de negocios. En consecuencia, le solicitó nuevamente al foro de instancia que lo autorizara a llevar a cabo los trámites de segregación y agrupación, y a presentar tres (3) cotizaciones para dichos trabajos. Ese mismo día, el TPI declaró Ha Lugar la *Moción Solicitando Orden.*

El 21 de febrero de 2025, el Peticionario presentó una "**Moción Solicitando Reconsideración"**, alegando que el 13 de febrero de 2025 RIOP presentó una "**Réplica a Oposición"** y que ese mismo día el Tribunal emitió una *Orden* declarando "Ha Lugar" dicha moción, sin haber notificado la *Resolución* de forma regular ni conceder el término de veinte (20) días

que corresponde para oponerse. Sostuvo que resolver de manera inmediata, sin permitirle presentar su oposición, evidencia un trato parcial a favor de RIOP y en menosprecio de las normas procesales y de directrices del Tribunal Supremo de Puerto Rico.

El 24 de febrero de 2025, RIOP presentó una "**Oposición a Solicitud de Reconsideración**", en la que argumentó que el señor González Laabes había tenido tiempo suficiente para presentar un plan de trabajo y que su incumplimiento con las órdenes del foro *a quo* continuaban afectando los intereses de RIOP. Añadió que el Peticionario pretendía reconsiderar una *Resolución* emitida el 9 de enero de 2025, la cual ya era final y firme, razón por la cual le peticionó al Tribunal que declarara "No Ha lugar" dicha solicitud.

El 17 de marzo de 2025, se celebró una vista mediante la cual el foro recurrido determinó que el ingeniero Jorge L. Cajigas (en adelante, "Ing. Cajigas") sería quien realizaría los trabajos, incluyendo la mensura y la tramitación de la permisología correspondiente. Más adelante, el 4 de abril de 2025, RIOP presentó una "**Moción en Solicitud de Orden**" en la que alegó que, durante el juicio, se describió sin objeción del señor González Laabes que el solar a segregar incluía el taller de mecánica y su estacionamiento, conforme a lo pactado en el Contrato, al uso público continuo y a lo determinado en la *Sentencia* dictada. Señaló que así lo corroboró el testimonio del agente del Banco Popular y la tasación utilizada en el juicio, en la cual también se incluyó el estacionamiento.

Indicó que pretender ahora limitar la segregación solo al área del taller contradice la *Sentencia* e inutilizaría el solar al dejarlo sin acceso, y que mientras la *Sentencia* dispone la segregación de 800 metros, el área que propone el señor González Laabes es de solo unos 350 metros. Asimismo, reconoció que la cabida podría ser menor por expropiaciones de carretera, asunto conocido por todas las partes. Planteó, además, que sigue sufriendo daños al no poder implementar su plan de negocios, incluyendo el deterioro del edificio y la imposibilidad de hacer mejoras mientras permanece como arrendataria. Por último, sostuvo que el señor

González Laabes ha mantenido una actitud frívola y temeraria que impide el cumplimiento de la *Sentencia*. En vista de lo anterior, le solicitó al foro de instancia que ordenara al Peticionario a culminar la segregación del solar de 800 metros, taller y estacionamiento, descontando solo el área expropiada y completar las gestiones necesarias para formalizar la compraventa.

El 14 de abril de 2025, RIOP presentó una "**Moción en Solicitud de Orden en Cuanto a Mejoras**" en la que expuso que continúa sufriendo daños al no poder ejecutar su plan de negocios mientras permanece bajo un contrato de arrendamiento. Señaló que el edificio se ha deteriorado con el paso del tiempo y que no ha podido realizar mejoras mayores, las cuales corresponden al señor González Laabes, según lo dispuesto en la cláusula Núm. 13 del Contrato, que establece que las reparaciones que excedan los 500 dólares estarán a cargo de la parte arrendadora. En consecuencia, le solicitó al Tribunal que ordenara al Peticionario a realizar las mejoras necesarias.

El 22 de abril de 2025, el señor González Laabes presentó su "**Posición de la Parte Demandada respecto a las Solicitudes de RIOP**", en la que sostuvo que el Contrato entre las partes solo menciona el arrendamiento de un local de aproximadamente 13,000 pies cuadrados con un solar de unos 3,000 metros cuadrados, incluyendo un solar aledaño donde ubica el taller de mecánica. Afirmó que en ningún momento el Contrato, la "**Demanda**" original, la "**Demanda Enmendada**" ni el informe de *Conferencia Preliminar entre Abogados* mencionan un solar de 800 metros, y que, si se intentara segregar esa cantidad, se estaría incluyendo terreno de uso público.

Añadió que RIOP no ha presentado prueba alguna que sustente su alegación de que en juicio se determinó segregar 800 metros, y que la *Sentencia* del TPI solo hace referencia al solar aledaño donde está el taller de mecánica, actualmente subarrendado y con una cabida aproximada de 450 metros cuadrados. Sostuvo que en ninguna parte de la *Sentencia* se ordena transferir un solar adicional de 800 metros, por lo que la nueva reclamación de RIOP carecía de fundamento y debía ser rechazada.

En cuanto a la solicitud de mejoras, argumentó que el Contrato no establece que el arrendador deba costear mejoras y que lo solicitado por RIOP constituye una remodelación completa del techo con trabajos de sustitución, membranas nuevas y garantía de diez (10) años, lo cual no es una reparación menor, sino una mejora sustancial no contemplada en el referido acuerdo. Por último, expresó que resulta improcedente pretender imponerle ese gasto cuando ya existe una *Sentencia* que ordena transferir la propiedad.

El 8 de mayo de 2025, RIOP presentó una "**Réplica a Posición de la Parte Demandada**" en la que alegó que no ha solicitado que se segregue solar adicional alguno, sino que se dé fiel cumplimiento a la *Sentencia* del 21 de abril de 2023. Sostuvo que el señor González Laabes está confundido y ha olvidado que el taller de mecánica con su estacionamiento y el local comercial son dos fincas diferentes y que por ello es que hay que segregar y agrupar, según se desprende de la *Sentencia*. Recalcó que no está realizando ninguna nueva reclamación y las expresiones del Peticionario inducen a error al Tribunal.

El 21 de mayo de 2025, se celebró una vista para discutir las mociones presentadas y en ella se señaló una vista de inspección ocular para el 2 de junio de 2025. Luego de celebrada la referida vista ocular, el 23 de junio de 2025, el señor González Laabes presentó un "**Memorando en Cumplimiento de Orden**", en el que expuso que el juez de instancia delimitó la controversia exclusivamente a determinar si el predio de aproximadamente 300 metros entre la carretera 115 y la propiedad vendida debía incluirse en el contrato original, y que cualquier otro planteamiento es ajeno a la controversia.

Asimismo, indicó que en la inspección ocular el Tribunal constató que el área del taller de mecánica y su estacionamiento están claramente delimitados por una verja metálica y que, según el ingeniero Cajigas, tienen una cabida aproximada de 450 metros cuadrados. Sostuvo que el expediente, el contrato de arrendamiento, la "**Demanda**" original, la "**Demanda Enmendada**", las mociones y las *Resoluciones* previas solo

hacen referencia al solar aledaño del taller de mecánica y nunca a un predio adicional.

Añadió que lo que ahora pretende RIOP es incluir un terreno de aproximadamente 217 metros cuadrados ubicado al frente de la propiedad, el cual nunca fue reclamado, tasado ni negociado, y cuyo traspaso no se ordena en la *Sentencia*. Argumentó que resulta jurídicamente improcedente que el Tribunal disponga su transferencia a título de propiedad, ya que ello implicaría conceder un terreno no contemplado ni reclamado en las etapas procesales anteriores.

Ese mismo día, RIOP presentó un "**Memorando en Cumplimiento de Orden"** en el que informó que, durante la inspección ocular celebrada el 2 de junio de 2025, el Ing. Cajigas determinó que el solar que debe segregarse y agruparse cuenta con una cabida aproximada de 650 metros cuadrados, cifra que concuerda con la referencia a 800 metros en la *Sentencia* al considerar el área de uso público. Sostuvo que el señor González Laabes ha intentado retrasar el proceso y evitar el cumplimiento del contrato y de la *Sentencia* final y firme, recurriendo a alegaciones falsas y maniobras dilatorias para alterar lo ya adjudicado. Señaló que la entrada del taller de mecánica nunca ha cambiado desde antes de la firma del Contrato y que el solar ha estado en posesión de RIOP, claramente delimitado con verjas y puntos desde 2017.

Afirmó, además que ha cumplido con todos los requerimientos judiciales, incluyendo la designación de un agrimensor y un notario, mientras que el señor González Laabes ha interpuesto múltiples recursos para demorar el cumplimiento de la *Sentencia.* Planteó que limitar la segregación únicamente al área del taller, como propone el Peticionario, contradice lo resuelto en la *Sentencia* y dejaría el solar sin acceso. Alegó que dicha conducta temeraria ha prolongado innecesariamente el litigio y ocasionado múltiples daños y perjuicios. Así pues, le solicitó al TPI que haga cumplir de forma efectiva la *Sentencia* y evalúe la imposición de sanciones.

Posteriormente, el 25 de junio de 2025, el señor González Laabes presentó su "**Réplica"** en la que señaló que RIOP no abordó lo observado

en la inspección ocular y se limitó a hacer un recuento del historial del caso. Indicó que la Recurrida incluyó fotografías a pesar de que el Tribunal había expresado que no debía presentarse nueva evidencia y que la propia parte reconoció que podían ser descartadas.

Afirmó que resulta contradictorio que RIOP lo acuse de desafiar las *Órdenes* de Tribunal cuando es RIOP quien las incumple al someter evidencia no autorizada. Añadió que la súplica de la Recurrida es deficiente porque no especifica qué debe declararse con lugar, qué parte de la *Sentencia* debe cumplirse ni a qué predios se refiere y que además solicita honorarios sin demostrar temeridad, confundiendo ésta con el ejercicio legítimo de recursos apelativos. En armonía con lo anterior, le solicitó al TPI que determine que RIOP no ha cumplido con la *Orden*, que declare "No Ha Lugar" su solicitud y que reconozca que no tiene derecho a un predio adicional distinto al del taller de mecánica.

El 26 de junio de 2025, RIOP presentó su "**Dúplica**" indicando que cumplió con lo ordenado tras la inspección ocular. Destacó que el recuento histórico incluido en su escrito era necesario, pues de una simple lectura se evidencian los atrasos atribuibles al señor González Laabes y el uso abusivo de recursos post *Sentencia* con el único fin de impedir el fiel cumplimiento del referido dictamen, lo que denota su conducta temeraria.

Finalmente, el 18 de julio de 2025, el foro de instancia emitió una *Resolución* en la que concluyó que el acceso peatonal y vehicular al taller es únicamente a través del estacionamiento ubicado frente a este. Determinó que el área a segregarse comprende aproximadamente entre 600 y 620 metros cuadrados, incluyendo el taller de mecánica aledaño y el estacionamiento frontal hasta el límite con el área destinada a uso público por el municipio. En consecuencia, ordenó al Ing. Cajigas llevar a cabo la segregación y agrupación de dicho predio, y dispuso que, una vez aprobados estos trámites, se otorguen las escrituras correspondientes.

Dicha determinación fue objeto de una "**Moción Solicitando Reconsideración de Resolución y que la misma se Deje Absolutamente sin Efecto**" la cual fue declarada "No Ha Lugar" el 27 de

agosto de 2025. Aún insatisfecho, el Apelante compareció ante este Tribunal mediante el recurso de epígrafe y le imputó al foro primario la comisión de los siguientes errores:

> PRIMER ERROR: Cometió error de hecho y de derecho el TPI, cuando para poder justificar que ese solar adicional estaba incluido en la tasación, adjudica que un agente del Banco Popular testificó que esa área había sido incluida en la tasación que el Banco Popular solicitó para considerar el préstamo. Sobre ese extremo, el TPI se desmiente así mismo, cuando en otros dos (2) escritos, expresa lo contrario.

> SEGUNDO ERROR: Erró el TPI al determinar que González debe traspasarle a RIOP un predio adicional que nunca fue solicitado y que nunca estuvo bajo consideración.

> TERCER ERROR: Cometió error de hecho y de derecho el TPI en adjudicar sin que se presentase prueba de clase alguna que había que traspasar a RIOP un predio adicional que llega hasta la carretera 115, sin que se presentara prueba de la descripción del referido solar.

> CUARTO ERROR: Cometió error de hecho y de derecho el TPI al disponer que el Ing. Cajigas debe proceder a la segregación de un predio adicional, no definido, predio que debe ser incluido en las escrituras correspondientes, concediendo al Ingeniero Cajigas facultades exclusivas del Tribunal.

> QUINTO ERROR: Erró el TPI al determinar que el solar del taller de mecánica está enclavado y que su estacionamiento no tiene salida, hecho que es absolutamente incorrecto, ya que dicho solar por la parte de al frente colinda con el estacionamiento público de RIOP y por la parte trasera, colinda con una calle sin pavimentar que conduce a una casa de vivienda del Sr. González y a la parte trasera del estacionamiento del Banco Popular.'

> SEXTO ERROR: Cometió error de hecho y de derecho el TPI al favorecer desmedidamente la posición de la demandante, en perjuicio del demandado.

El 4 de noviembre de 2025, compareció RIOP mediante "**Alegato en Oposición a Apelación y en Oposición a Alegato Suplementario**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.[2]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Díaz Ayala et al. v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones

---

[2] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

esenciales para su validez". Art. 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

**B.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic, 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los

hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 341, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**III.**

En el presente caso, el señor González Laabes nos solicitó la revocación de la *Resolución* del TPI en la que se determinó que el solar aledaño al local objeto de la presente controversia incluye su respectivo estacionamiento.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se discutirán de manera conjunta. En síntesis, el Peticionario sostiene que el foro de instancia erró al determinar que: (1) el solar adicional estaba incluido en la tasación realizada por el Banco Popular, (2) debe traspasarle a RIOP un predio adicional que nunca fue solicitado sin que se presentara prueba de clase alguna, (3) el Ing. Cajigas debe proceder a la segregación de un predio adicional, no definido que debe ser incluido en las escrituras correspondientes, (4) el solar del taller de mecánica está enclavado y que su estacionamiento no tiene salida y al (5) favorecer desmedidamente la posición de RIOP.

Del expediente ante nuestra consideración se desprende que el 3 de marzo de 2022 RIOP presentó una "**Demanda**" contra el señor González Laabes alegando que las partes habían acordado un contrato de arrendamiento con opción a compraventa sobre una propiedad ubicada en el barrio Pueblo de Rincón, incluyendo un solar aledaño, el cual el Peticionario se había negado a cumplir. Posteriormente, el 1 de septiembre de 2022, la "**Demanda**" fue enmendada para incluir reclamaciones por atrasos en proyectos, inflación de intereses hipotecarios y pérdidas mensuales.

Tras varios trámites procesales, el 21 de abril de 2023, el foro de instancia dictó *Sentencia* declarando "Ha Lugar" la "**Demanda Enmendada**" y ordenó al señor González: (1) efectuar la segregación y

agrupación del solar de 800 metros cuadrados correspondiente al área del taller de mecánica, así como asumir los gastos, escrituras y honorarios de abogado para su tramitación; (2) otorgar el financiamiento de la propiedad a un 6 % de interés por un término de veinte años; (3) descontar del precio de compraventa los cánones de arrendamiento pagados por RIOP desde enero de 2022, incluyendo los depositados en el Tribunal; (4) pagar $5,000 en honorarios de abogado por temeridad; y (5) cubrir las costas y gastos incurridos por la Recurrida.

No obstante lo anterior, el 18 de septiembre de 2023, este Tribunal modificó dicha *Sentencia* para eliminar la orden de que el financiamiento fuera a veinte años y que los cánones de arrendamiento abonados fueran descontados del precio de compraventa, por no desprenderse tales acuerdos de la prueba presentada en juicio. Así las cosas, el 21 de noviembre de 2023, RIOP acudió al Tribunal Supremo mediante recurso de *certiorari.* El 9 de diciembre de 2024 el máximo foro judicial expidió el mandato en el presente caso y denegó el recurso.

El 7 de enero de 2025, RIOP solicitó al TPI que ordenara al señor González Laabes asumir los costos de segregación y agrupación del solar de 800 metros y los demás gastos necesarios para otorgar las escrituras. Posteriormente, se designó al Ing. Cajigas para realizar esos trabajos y gestionar la permisología correspondiente.

El 4 de abril de 2025, RIOP presentó una *Moción en Solicitud de Orden* alegando que, según lo expuesto en el juicio, el solar a segregar incluía el taller de mecánica y su estacionamiento, citando el testimonio del agente del Banco Popular y la tasación presentada. El 22 de abril de 2025, el señor González Laabes presentó su "**Posición de la Parte Demandada respecto a las Solicitudes de RIOP"**, afirmando que nunca se mencionó un solar de 800 metros y que ello abarcaría terreno de uso público. Tras una inspección ocular y la presentación de memorandos de derecho por ambas partes, el 18 de julio de 2025, el TPI emitió una *Resolución* determinando que el área a segregarse comprende entre 600 y 620 metros cuadrados, incluyendo el taller de mecánica y el estacionamiento frontal.

Conforme adelantáramos en los acápites anteriores, los tribunales apelativos no podemos sustituir la apreciación de la prueba ni la adjudicación de credibilidad otorgada por el Tribunal de Primera Instancia, salvo que medie error manifiesto, prejuicio, parcialidad o pasión. Ortiz Ortiz v. Medtronic, *supra*, pág. 779; Dávila Nieves v. Meléndez Marín, *supra*, págs. 771-772. Lo anterior responde a que el foro primario es quien escucha y observa directamente a los testigos. Por consiguiente, sólo procede la revisión si la decisión es claramente errónea o carece de base suficiente. Gómez Márquez et al. v. El Oriental, *supra*, pág. 794.

Tras un análisis minucioso del expediente ante nuestra consideración, incluyendo la "**Demanda Enmendada**" su *Contestación*, los *memorandos de derecho* presentados por las partes, la prueba presentada durante el juicio celebrado en el caso y la *Resolución* aquí recurrida, hemos arribado a la conclusión de que el solar aledaño al local objeto de la presente controversia incluye su respectivo estacionamiento. Nos explicamos.

En primer lugar, del propio Contrato suscrito por las partes se desprende claramente que el local comercial cuenta con aproximadamente trece mil (13,000) pies cuadrados de construcción y un solar con cabida de alrededor de tres mil (3,000) metros cuadrados, estableciendo expresamente que se incluye el solar aledaño correspondiente al área de taller de mecánica ubicado al lado izquierdo de la propiedad. Ello evidencia que desde el inicio de la relación contractual las partes entendieron como parte de la propiedad el solar contiguo que hoy ocupa el taller de mecánica.

Del expediente ante nuestra consideración también se desprende claramente que el estacionamiento constituye parte integral de ese solar aledaño. El Ing. Cajigas participó en la inspección ocular celebrada por el foro de instancia y realizó las mediciones del área, concluyendo que, sumando el taller y el estacionamiento y descontando el espacio expropiado por la Autoridad de Carreteras y Transportación, el solar comprende aproximadamente entre 600 y 620 metros cuadrados. Durante dicha inspección, el TPI pudo constatar directamente que el único acceso

peatonal y vehicular al taller de mecánica es a través del estacionamiento ubicado frente a este.

Cabe destacar, además, que el propio señor González Laabes reconoció en su testimonio bajo juramento que el solar que ocupa el taller de mecánica tiene aproximadamente 800 metros cuadrados, que forma parte de otra finca y que aún no ha sido objeto de segregación. Esta admisión reviste especial importancia, pues revela que se trata de un solar claramente identificado y diferenciado, aunque pendiente de segregarse formalmente, y que ha sido tratado por las partes como parte del negocio objeto del Contrato, incluyendo tanto el taller de mecánica como su estacionamiento.

De igual manera, es menester destacar que el área ha estado en posesión continua de RIOP desde la firma del Contrato el 18 de abril de 2017 y se encuentra delimitada con puntos y verjas. Lo anterior implica que, dicho espacio ha sido tratado de manera constante como parte del acuerdo, comprendiendo tanto el taller de mecánica como la zona destinada al estacionamiento de vehículos. Por último, de la tasación realizada por el Banco Popular para llevar a cabo la compraventa, la cual fue presentada en el juicio, se desprende que la zona de aparcamiento del taller fue incluida como parte del solar a segregar, lo cual refuerza el entendimiento de que ambos constituyen una sola unidad funcional e indivisible para efectos de la compraventa en cuestión.

En suma, un examen desapasionado de la prueba no revela parcialidad ni error por parte del TPI. Por el contrario, las determinaciones contenidas en la *Resolución* recurrida se ajustan fielmente a la evidencia presentada durante el juicio celebrado y a lo observado por el juzgador de los hechos durante la vista ocular celebrada, de lo cual se desprende de manera inequívoca que el solar a ser segregado comprende tanto el taller de mecánica como su estacionamiento.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *expide* el auto de *certiorari* presentado y se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones